## MICHAEL CANNATA ET AL. *v.* DEPARTMENT OF ENVIRONMENTAL PROTECTION ET AL.
## (15371)

Peters, C. J., and Callahan, Borden, Palmer and E. O'Connell, Js.

Argued April 30—officially released August 20, 1996

*Frank C. White, Jr.*, for the appellants-appellees (plaintiffs).

*Janet P. Brooks*, assistant attorney general, with whom were *Kimberly P. Massicotte*, assistant attorney general, and, on the briefs, *Richard Blumenthal*, attorney general, and *Joseph Rubin*, assistant attorney general, for the appellees-appellants (named defendant et al).

*Michael Stern*, for the appellee (defendant Connecticut Fund for the Environment).

PALMER, J. The plaintiffs, Deborah and Michael Cannata, appeal from the judgment of the trial court dismissing their administrative appeal from the decision of the named defendant,[1] the department of environmental protection (department), in which the commissioner of environmental protection (commissioner) had rejected their application for authorization under General Stat-

---

[1] The attorney general of the state of Connecticut, the Connecticut Fund for the Environment, the Cromwell Fish and Game Club, the Connecticut River Watershed Council, Inc., and the Mattabeseck Audubon Society intervened in the administrative proceedings pursuant to General Statutes § 22a-19, and also are defendants in this case. Hereinafter, references to the defendants are to the department of environmental protection and the attorney general, both of whom filed cross appeals.

utes §§ 22a-342 and 22a-349[2] to clear-cut[3] approximately fifty-five acres of their property in Cromwell. The plaintiffs sought permission from the commissioner to cut down the trees on the property, which is located within the stream channel encroachment lines along the Connecticut River, in order to make the land suitable for farming.[4] Specifically, the plaintiffs requested a determination by the commissioner that their proposed land

---

[2] General Statutes § 22a-342 provides: "The commissioner shall establish, along any tidal or inland waterway or flood-prone area considered for stream clearance, channel improvement or any form of flood control or flood alleviation measure, lines beyond which, in the direction of the waterway or flood-prone area, no obstruction or encroachment shall be placed by any person, firm or corporation, public or private, unless authorized by said commissioner. The commissioner shall issue or deny permits upon applications for establishing such encroachments based upon his findings of the effect of such proposed encroachments upon the flood-carrying and water storage capacity of the waterways and flood plains, flood heights, hazards to life and property, and the protection and preservation of the natural resources and ecosystems of the state, including but not limited to ground and surface water, animal, plant and aquatic life, nutrient exchange, and energy flow, with due consideration given to the results of similar encroachments constructed along the reach of waterway. Each application for a permit shall be accompanied by a fee as follows: (1) No change in grades and no construction of above-ground structures, two hundred fifty dollars; (2) a change in grade and no construction of above-ground structures, five hundred dollars; and (3) a change in grade and above-ground structures or buildings, two thousand five hundred dollars. The commissioner may adopt regulations, in accordance with the provisions of chapter 54, to prescribe the amount of the fees required pursuant to this section. Upon the adoption of such regulations, the fees required by this section shall be as prescribed in such regulations."

General Statutes § 22a-349 provides: "The provisions of sections 22a-342 to 22a-348, inclusive, shall not be deemed to restrict agricultural or farming uses of lands located within the stream channel encroachment lines including the building of fences, provided this section shall not apply to farm buildings and farm structures."

[3] Clear-cutting is the removal of all timber from an area.

[4] We have previously entertained an appeal by the plaintiffs, following a decision by the department prohibiting them from clear-cutting their Cromwell property. In Cannata v. Dept. of Environmental Protection, 215 Conn. 616, 577 A.2d 1017 (1990), we affirmed the judgment of the trial court dismissing the plaintiffs' administrative appeal from an adverse ruling by the department, on the ground that they had failed to exhaust their administrative remedies.

use was exempt from regulation by the department under § 22a-349 or, if not, that they were entitled to a permit under § 22a-342 authorizing them to clear-cut the fifty-five acres. The commissioner concluded that the exemption for agricultural or farming use established under § 22a-349 was not applicable to the plaintiffs' proposed clear-cutting and also denied their permit application.

The plaintiffs appealed from the decision of the commissioner to the Superior Court pursuant to General Statutes § 4-183 (a).[5] The defendants moved to dismiss the plaintiffs' appeal on the ground that the trial court lacked jurisdiction to consider the plaintiffs' claims because the commissioner's decision was not an appealable final decision under General Statutes § 4-166 (3).[6] The trial court rejected the defendants' jurisdictional argument, but concluded that the plaintiffs' claims were without merit and, accordingly, dismissed their appeal. The plaintiffs have appealed from the judgment of the trial court and the defendants have cross appealed from the denial of their motion to dismiss.[7] We affirm the judgment of the trial court.

Some of the facts and procedural history relevant to this appeal are set forth in our opinion in *Cannata* v. *Dept. of Environmental Protection*, 215 Conn. 616, 577

[5] General Statutes § 4-183 (a) provides: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the superior court as provided in this section. The filing of a petition for reconsideration is not a prerequisite to the filing of such an appeal."

[6] General Statutes § 4-166 (3) provides: " 'Final decision' means (A) the agency determination in a contested case, (B) a declaratory ruling issued by an agency pursuant to section 4-176, or (C) an agency decision made after reconsideration. The term does not include a preliminary or intermediate ruling or order of an agency, or a ruling of an agency granting or denying a petition for reconsideration."

[7] The parties appealed to the Appellate Court and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

A.2d 1017 (1990). "The plaintiffs own [approximately] two hundred acres of land in Cromwell bordering the Connecticut River. In 1988, the plaintiffs sought permits from the [commissioner], pursuant to § 22a-342, for permission to develop a portion of their land for a subdivision and golf course within the stream channel encroachment lines. On June 21, 1988, the commissioner granted the plaintiffs permission to develop a subdivision but denied with prejudice permission to construct a golf course. The construction of a golf course would have involved cutting the floodplain forest within the stream channel encroachment lines. The commissioner's decision stated, inter alia, that, since 1976, floodplain forests have been recognized as critical habitats and that this particular floodplain forest is a resource of 'special ecological significance, both in itself and through its function as a buffer to the adjacent Dead Man's Swamp, another critical habitat.'

"On July 5, 1988, the plaintiffs notified the commissioner that they intended to cut trees within the stream channel encroachment lines in order to expand their agricultural crop land. On July 8, 1988, the commissioner issued, ex parte, a cease and desist order, directing the plaintiffs to stop cutting trees because they had failed to apply for a permit as provided in § 22a-342.

"On July 18 and 19, 1988, a hearing was held, pursuant to General Statutes § 22a-7,[8] before a hearing officer

_____

[8] General Statutes § 22a-7 provides: "(a) The commissioner, whenever he finds after investigation that any person is causing, engaging in or maintaining, or is about to cause, engage in or maintain, any condition or activity which, in his judgment, will result in or is likely to result in imminent and substantial damage to the environment, or to public health within the jurisdiction of the commissioner under the provisions of chapters 440, 442, 445, 446a, 446c, 446d and 446k, or whenever he finds after investigation that there is a violation of the terms and conditions of a permit issued by him that is in his judgment substantial and continuous and it appears prejudicial to the interests of the people of the state to delay action until an opportunity for a hearing can be provided, or whenever he finds after investigation that any person is conducting, has conducted, or is about to conduct an activity

designated by the commissioner to determine whether the cease and desist order should be upheld. The Connecticut Fund for the Environment, Inc., intervened in support of the cease and desist order. On July 29, 1988, the hearing officer issued a final decision upholding the order until the plaintiffs filed a permit application and [the department] had taken final action on it. From this decision, the plaintiffs appealed to the Superior Court pursuant to § 4-183." Id., 618–21.

The trial court in that earlier case, sua sponte, dismissed the plaintiffs' appeal for lack of subject matter jurisdiction, concluding that the plaintiffs had failed to exhaust their administrative remedies. Id., 620. The plaintiffs appealed and we affirmed the judgment of the trial court.[9]

which will result in or is likely to result in imminent and substantial damage to the environment, or to public health within the jurisdiction of the commissioner under the provisions of chapters 440, 442, 445, 446a, 446c, 446d and 446k for which a license, as defined in section 4-166, is required under the provisions of chapter 440, 442, 445, 446a, 446c, 446d or 446k without obtaining such license, may, without prior hearing, issue a cease and desist order in writing to such person to discontinue, abate or alleviate such condition or activity."

[9] In *Cannata* v. *Dept. of Environmental Protection*, supra, 215 Conn. 621, the plaintiffs claimed that "the trial court erred in dismissing their appeal for failure to exhaust an administrative remedy because the applicability of the remedy, i.e., filing an application for a permit, raises a jurisdictional issue, thereby creating an exception to the exhaustion requirement." We disagreed, concluding that "[w]hether the plaintiffs' proposed activity within the stream channel encroachment lines is a placement of an 'obstruction or encroachment' requiring them to obtain a permit pursuant to § 22a-342 and whether the plaintiffs' proposed use of their land is an 'agricultural or farming' use within § 22a-349 are factual determinations best left to the commissioner." Id., 627. We further observed that the plaintiffs had two administrative avenues available to them by which to obtain this determination: they could apply for a permit under § 22a-342 to cut down and remove trees from their property located within the stream channel encroachment lines, or they could petition the commissioner under General Statutes § 4-176 for a declaratory ruling on the applicability of §§ 22a-342 and 22a-349 to the proposed use of their land within the stream channel encroachment lines. Id., 629–30 n.9. Because the plaintiffs had not pursued either course of action, we concluded that they had failed to exhaust their administrative

Thereafter, on August, 16, 1990, the plaintiffs submitted to the commissioner the stream channel encroachment line permit application involved in this appeal. Attached to the completed application form was a three page cover letter addressed to Steven Derby, the supervising civil engineer of the inland waters resources division of the department, in which the plaintiffs[10] sought to "clarify several points of fact to facilitate [the department's] review of [the] application" and "to define exactly what the legal obligations are of the [department] regarding [the] application." In particular, the plaintiffs indicated that they were seeking either a determination by the department that their intended land use was exempt from the permit process by virtue of § 22a-349 or, if the commissioner concluded otherwise, a permit under § 22a-342 allowing them to cut down and clear the trees on the fifty-five acre parcel so that they could use the land for farming.

Following a hearing on the plaintiffs' application, the department hearing officer issued his proposed final decision in which he concluded that the plaintiffs' proposed clear-cutting of the fifty-five acre parcel of property "would be an obstruction or encroachment . . . within the meaning of § 22a-342 [because] [t]he record clearly indicate[d] that that activity could create flood hazards such as [§§ 22a-342 through 22a-348] are meant to prevent." The hearing officer, however, "recommended that the [c]ommissioner issue a [f]inal [d]ecision . . . recognizing that the [applicants'] proposed clearing of trees and growing of crops constitute an agricultural use for which they do not need to obtain a § 22a-342 permit because of § 22a-349, and (b) setting forth appropriate prohibitions on any non-essential,

remedies and, therefore, we affirmed the judgment of the trial court dismissing their appeal.

[10] Both the letter and the application were signed by Michael Cannata only, but purported to be filed on behalf of both plaintiffs.

non-agricultural aspects of that activity that might have adverse flooding effects." Thereafter, the commissioner issued a final decision rejecting the hearing officer's recommendation. After reviewing the legislative history of § 22a-349 and noting that exemptions to this statute are to be strictly construed, the commissioner concluded that § 22a-349 exempts only those farming or agricultural uses that were in existence at the time of the establishment of the stream channel encroachment lines. The commissioner further concluded, however, that "[e]ven assuming . . . that § 22a-349 exempts new as well as existing farming uses, the [plaintiffs'] proposal remains subject to the permit requirement . . . because, while the cultivation of crops constitutes farming, clear-cutting [fifty-five] acres of forest to develop farmable land does not."[11] The commissioner then concluded that the plaintiffs had failed to sustain their burden of establishing that they were entitled to a permit under § 22a-342 and, accordingly, denied the plaintiffs' permit application.[12]

The plaintiffs appealed from the decision of the commissioner to the trial court. The defendants moved to dismiss the appeal on the ground that the commissioner's decision was not a final decision in a contested

[11] The commissioner adopted the hearing officer's finding that the plaintiffs' proposed clear-cutting would constitute an obstruction or encroachment within the meaning of § 22a-342.

[12] In denying the plaintiffs' permit application, the commissioner stated in pertinent part as follows: "An applicant bears the burden of demonstrating that his proposal meets all statutory criteria for the granting of the application. . . . Apparently putting all their eggs in the § 22a-349 exemption basket, the [a]pplicants offered no evidence whatever with respect to any of the factors for decision [set forth under] § 22a-342. And the evidence adduced by the [s]taff and intervenors quite clearly showed that clear-cutting this parcel of floodplain forest would have deleterious hydraulic effect and would destroy an ecosystem of surpassing natural value, one that is among a handful of remaining examples of its kind in Connecticut. On this record, therefore, the [a]pplicants did not discharge their burden of proving that the application should be granted, and it is accordingly denied."

case[13] and, therefore, was not appealable under § 4-183 (a). Specifically, the defendants claimed that the plaintiffs' request for permission to clear-cut their property was merely a permit application under § 22a-342 and that, because the hearing held on the plaintiffs' application was not statutorily required, the application did not give rise to a contested case. In response, the plaintiffs claimed that their request, although not so denoted, constituted a petition under § 4-176 (a)[14] for a declaratory ruling by the commissioner that their proposed land use was exempt from the permit process and, moreover, that the commissioner had treated their request as such. The plaintiffs further claimed that their application for a permit under § 22a-342 was merely an adjunct to their request for a declaratory ruling and that they had filed the permit application in light of the possibility of an adverse ruling by the commissioner on the question of whether they were exempt from

---

[13] "Contested case" is defined as "a proceeding . . . in which legal rights, duties or privileges of a party are required by statute to be determined by an agency after an opportunity for [a] hearing or in which a hearing is in fact held, but does not include proceedings on a petition for a declaratory ruling under section 4-176 . . . ." General Statutes § 4-166 (2). Thus, a contested case is a case in which an "agency is *required* to provide an opportunity for a hearing to determine a party's legal rights or privileges." (Emphasis added.) *Summit Hydropower Partnership* v. *Commissioner of Environmental Protection*, 226 Conn. 792, 811, 629 A.2d 367 (1993).

[14] General Statutes § 4-176 provides in relevant part: "Declaratory rulings. . . . (a) Any person may petition an agency, or an agency may on its own motion initiate a proceeding, for a declaratory ruling as to the validity of any regulation, or the applicability to specified circumstances of a provision of the general statutes, a regulation, or a final decision on a matter within the jurisdiction of the agency. . . .

"(e) Within sixty days after receipt of a petition for a declaratory ruling, an agency in writing shall: (1) Issue a ruling declaring the validity of a regulation or the applicability of the provision of the general statutes, the regulation, or the final decision in question to the specified circumstances, (2) order the matter set for specified proceedings, (3) agree to issue a declaratory ruling by a specified date, (4) decide not to issue a declaratory ruling and initiate regulation-making proceedings, under section 4-168, on the subject, or (5) decide not to issue a declaratory ruling, stating the reasons for its action. . . ."

the permit process. The plaintiffs claim that because a declaratory ruling is an appealable "final decision" under §§ 4-183 (a) and 4-166 (3), the trial court had jurisdiction over their administrative appeal.

The trial court denied the defendants' motion to dismiss, concluding that the plaintiffs had requested, and the commissioner had issued, a declaratory ruling determining the applicability of the § 22a-349 exemption to the plaintiffs' proposed land use. In so holding, the trial court stated that "[a]lthough the plaintiff[s] did not state specifically that [the] August, 1990 letter to the [d]epartment was a petition for a declaratory ruling pursuant to § 4-176, it was in essence, and unmistakably, just such a petition." The trial court noted, as evidence that the plaintiffs' request constituted a petition for a declaratory ruling, that the commissioner, before acting upon the plaintiffs' permit application, had first determined the applicability of the § 22a-349 exemption to the plaintiffs' proposed clear-cutting and, furthermore, that the defendants had not previously challenged the form or legal sufficiency of the plaintiffs' request for a determination by the commissioner under § 22a-342.

Upon consideration of the merits of the plaintiffs' appeal, the trial court concluded that the record supported the commissioner's determination that the plaintiffs' proposed clear-cutting of their property was not an agricultural or farming use within the meaning of § 22a-349, and that the plaintiffs were, therefore, not exempt from the requirements of § 22a-342.[15] In accordance with this conclusion, the trial court dismissed the plaintiffs' administrative appeal. This appeal followed.

On appeal, the plaintiffs claim that the trial court improperly concluded that they were not entitled to an

[15] The plaintiffs did not challenge the commissioner's denial of their permit application under § 22a-342, and they have not done so on appeal to this court.

exemption from the § 22a-342 permit process.[16] On the cross appeal, the defendants maintain that the trial court improperly failed to dismiss the plaintiffs' administrative appeal for lack of subject matter jurisdiction. We agree with the trial court both that it had jurisdiction over the plaintiffs' appeal and that the commissioner reasonably determined that the plaintiffs were not entitled to an exemption from the permit process. Accordingly, we affirm the judgment of the trial court.

I

Because the defendants mount a challenge to the subject matter jurisdiction of the court, we must first address that claim.[17] As we have indicated, the defend-

---

[16] The plaintiffs also claim that: (1) the commissioner improperly concluded that the § 22a-349 exemption applied only to agricultural or farming uses in existence at the time of the establishment of the stream channel encroachment lines; (2) the commissioner's decision constituted invalid rule-making; and (3) the commissioner's decision violated the plaintiffs' equal protection rights guaranteed by the federal and state constitutions. Because our decision rests upon the determination that clear-cutting fifty-five acres of floodplain forest located within the stream channel encroachment lines does not constitute an agricultural or farming use under § 22a-349, we do not decide whether the exemption created thereunder applies only to property in agricultural or farming use at the time of the establishment of the stream channel encroachment lines. We also do not reach the plaintiffs' equal protection claim because that claim rests upon the assumption that the exemption applies only to those farming activities that were in existence at the time the stream channel encroachment lines were established.

Finally, the plaintiffs claim that the "conclusion by the commissioner that §§ 22a-342 through 22a-348 can be used to restrict agricultural and farming uses of land despite the language of § 22a-349 amounts to [the improper promulgation of] a new regulation by the commissioner." We reject this claim for the same reasons that we reject the plaintiffs' claim that the commissioner's application of § 22a-349 was improper. See part II of this opinion.

[17] "Jurisdiction of the subject-matter is the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong. . . . A court has subject matter jurisdiction if it has the authority to adjudicate a particular type of legal controversy. . . . [O]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding further with the case. . . ." (Citation omitted.) *Figueroa* v. *C & S Ball Bearing*, 237 Conn. 1, 4, 675 A.2d 845 (1996).

ants contend that the trial court was required to grant their motion to dismiss the plaintiffs' appeal on the ground that the commissioner's decision was not an "agency determination in a contested case" under § 4-166 (3) (A); see footnote 6; but, rather, the denial of a permit application. The plaintiffs do not challenge the defendants' contention that their permit application did not give rise to a final decision under § 4-166 (3) (A). They maintain, instead, that they had also sought and obtained a declaratory ruling from the department on the applicability of the § 22a-349 exemption to their proposed land use and, consequently, that the commissioner's decision is an appealable final decision under § 4-166 (3) (B) and § 4-183 (a). Our resolution of this issue, therefore, depends on the propriety of the trial court's conclusion that the plaintiffs' submission constituted a petition for a declaratory ruling by the department on the applicability of § 22a-349 to their proposal to clear-cut, and then to farm, the fifty-five acre parcel of property.[18]

We conclude that the record supports the trial court's determination that the plaintiffs' request constituted a petition for a declaratory ruling as to the applicability of the § 22a-349 exemption and that the commissioner's decision constituted such a ruling. In both their formal submission and the accompanying cover letter, the plaintiffs expressly requested a decision from the commissioner as to whether their proposed use of the fifty-five acres was exempt from regulation by the department under § 22a-349. Such a request falls squarely within the purview of § 4-176 (a).[19] Moreover, a review

[18] The defendants acknowledge that the trial court's resolution of this essentially fact-based issue is entitled to deference and may not be disturbed unless it is clearly erroneous.

[19] We note that under § 4-176 (b), each agency is directed to adopt regulations providing for "the form and content of petitions for declaratory rulings." The defendants have not claimed that the form or content of the plaintiffs' submission contravened any such requirement promulgated by the department.

of the commissioner's written decision reveals that he considered the plaintiffs' request as comprising two separate and distinct components: the commissioner characterized the plaintiffs' request as "an application . . . for (1) a determination that a permit is not required under § 22a-342 to clear-cut and subsequently farm [fifty-five] acres of floodplain forest within the stream channel encroachment lines along the Connecticut River in Cromwell, or, in the alternative, (2) a permit under § 22a-342 for those activities." Indeed, the majority of the commissioner's decision is devoted to an analysis of the plaintiffs' claim of entitlement to an exemption under § 22a-349 and his reasons for rejecting the plaintiffs' claim.

The defendants contend that the record mandates a contrary conclusion. In particular, the defendants point out that neither the plaintiffs nor the commissioner complied strictly with the notice requirements that, at the time, related to declaratory rulings. See Regs., Conn. State Agencies § 22a-3a-1 (c) (2).[20] The defendants fur-

---

[20] At the time of the plaintiffs' submission, § 22a-3a-1 (c) (2) of the Regulations of Connecticut State Agencies provided: "Within thirty (30) days following receipt of a petition, the commissioner shall determine whether to grant or deny it, and shall notify the petitioner. If the petition is granted, the commissioner shall publish in the Connecticut Law Journal a notice granting the petition and the right of the public to comment thereon, and the petitioner shall send notice by certified mail of the substance of the petition and the right to comment thereon to all persons known by the petitioner to have an interest in the declaratory ruling. If the number of such persons renders this method of notice unduly burdensome, the petitioner may instead publish such notice in a newspaper of general circulation in each area wherein those persons reside. He or she shall then submit to the commissioner a list of the persons to whom or newspapers to which notice was sent, the date of mailing or publication and, if applicable, the reasons why newspaper notice was appropriate. The commissioner shall accept public comment on the petition for thirty (30) days following publication or mailing of such notice, whichever is later. Following such thirty day period, the commissioner shall make a declaratory ruling and send it to all persons commenting on the petition or identified by the petitioner as having a direct interest in the ruling." This regulation has subsequently been repealed.

The plaintiffs apparently failed to send notice of their request to interested parties, and the commissioner did not publish notice of the hearing on the

ther note that, if the plaintiffs had regarded their request as one for a declaratory ruling under § 4-176, they likely would have initiated a declaratory judgment action in the Superior Court after the commissioner had failed to issue a ruling within 180 days of their filing, as was their right under General Statutes §§ 4-175 (a) (3) and 4-176 (i).[21]

The fact that the plaintiffs and the commissioner failed to comply with the notice requirements regarding declaratory rulings is not dispositive of the jurisdictional issue.[22] Although the commissioner did not issue a notice of the hearing precisely as required by the terms of the regulation then in effect, he did cause notice to be published in the Hartford Courant and, in addition, notified several public officials of the hearing.[23] Moreover, the record does not reveal, and the

plaintiffs' application in the Connecticut Law Journal. The commissioner, however, did publish notice of the hearing in the Hartford Courant.

[21] General Statutes § 4-175 (a) provides: "If a provision of the general statutes, a regulation or a final decision, or its threatened application, interferes with or impairs, or threatens to interfere with or impair, the legal rights or privileges of the plaintiff and if an agency (1) does not take an action required by subdivision (1), (2) or (3) of subsection (e) of section 4-176, within sixty days of the filing of a petition for a declaratory ruling, (2) decides not to issue a declaratory ruling under subdivision (4) or (5) of subsection (e) of said section 4-176, or (3) is deemed to have decided not to issue a declaratory ruling under subsection (i) of said section 4-176, the petitioner may seek in the superior court a declaratory judgment as to the validity of the regulation in question or the applicability of the provision of the general statutes, the regulation or the final decision in question to specified circumstances. The agency shall be made a party to the action."

General Statutes § 4-176 (i) provides: "If an agency does not issue a declaratory ruling within one hundred eighty days after the filing of a petition therefor, or within such longer period as may be agreed by the parties, the agency shall be deemed to have decided not to issue such ruling."

[22] The defendants do not claim that the parties' failure strictly to comply with the notice requirements deprived the commissioner of jurisdiction to render a declaratory ruling but, rather, that the lack of compliance with the notice provisions indicates that neither the plaintiffs nor the commissioner treated the plaintiffs' request as a petition for a declaratory ruling.

[23] The commissioner sent notice of the plaintiffs' request and the hearing scheduled thereon to Senator Edward Munster, Representative James

defendants do not claim, that any interested person was prejudiced by the parties' failure to adhere strictly to the terms of the regulation.

The defendants' argument regarding the plaintiffs' failure to invoke § 4-175 (a) (3) is also unpersuasive. The defendants' assertion to the contrary notwithstanding, it was perfectly reasonable for the plaintiffs, rather than seeking a judicial determination regarding the applicability of the § 22a-349 exemption immediately upon the expiration of the 180 day period following the date of their submission, to choose instead to await a decision by the commissioner. Thus, no inference regarding the plaintiffs' legal conception of their submission to the commissioner can fairly be drawn from the plaintiffs' failure to seek a declaratory judgment under § 4-175 (a) (3).[24]

Because the record supports the trial court's determination that the plaintiffs sought and obtained a declaratory ruling by the commissioner regarding the applicability of § 22a-349 to their proposed land use, and because a declaratory ruling is an appealable final decision under § 4-183 (a), the court had subject matter jurisdiction over the plaintiffs' appeal. Accordingly, we now turn to the merits of the plaintiffs' claim.

---

O'Rourke, and the first selectman of Cromwell. See General Statutes § 22a-6 (d).

[24] The defendants also claim that the issuance of a § 22a-342 permit was the only way for the plaintiffs to have obtained the release of the outstanding cease and desist order that had been issued by the department and, furthermore, that because the plaintiffs must have been aware that this avenue was their only such option, the trial court was required to conclude that the plaintiffs understood their submission to be a permit application and not a petition for a declaratory ruling. This argument is without merit. We see no reason why the department would not have lifted the cease and desist order had there been a determination by the commissioner that the plaintiffs' proposed activity was exempt from the permit process. Furthermore, the trial court was not required to draw any inference regarding the plaintiffs' state of mind solely from the fact that the cease and desist order remained in effect at the time the plaintiffs filed their submission with the department.

## II

The plaintiffs contend that the trial court improperly dismissed their appeal on its merits. They maintain instead that the commissioner improperly concluded that the clear-cutting of the plaintiffs' fifty-five acres of floodplain forest to make it suitable for farming is not an agricultural or farming use within the meaning of § 22a-349. We disagree.

Section 22a-349 provides that "[t]he provisions of sections 22a-342 to 22a-348, inclusive, shall not be deemed to restrict *agricultural or farming uses* of lands located within the stream channel encroachment lines including the building of fences, provided this section shall not apply to farm buildings and farm structures." (Emphasis added.) The plaintiffs claim that, because they intend to farm the fifty-five acre parcel, the clear-cutting necessary to effectuate that purpose must also be considered a farming or agricultural use and, consequently, that such clear-cutting is exempt from regulation under § 22a-349. The defendants, on the other hand, claim that razing the trees on fifty-five acres of forest land to make the property suitable for farming does not fall within the ambit of the § 22a-349 exemption. We agree with the defendants.

"Our resolution of this issue is guided by the limited scope of judicial review afforded by the Uniform Administrative Procedure Act; General Statutes § 4-166 et seq.; to the determinations made by an administrative agency. [W]e must decide, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion. *Ottochian* v. *Freedom of Information Commission*, 221 Conn. 393, 397, 604 A.2d 351 (1992). Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its

discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . *New Haven* v. *Freedom of Information Commission*, 205 Conn. 767, 774, 535 A.2d 1297 (1988). Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement. . . . *Griffin Hospital* v. *Commission on Hospitals & Health Care*, 200 Conn. 489, 496, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S. Ct. 781, 93 L. Ed. 2d 819 (1986); see also *New Haven* v. *Freedom of Information Commission*, supra, 773–74; *Wilson* v. *Freedom of Information Commission*, 181 Conn. 324, 342–43, 435 A.2d 353 (1980)."[25] (Internal quotation marks omitted.) *Connecticut Alcohol & Drug Abuse Commission* v. *Freedom of Information Commission*, 233 Conn. 28, 39, 657 A.2d 630 (1995); *Perkins* v. *Freedom of Information Commission*, 228 Conn. 158, 164–65, 635 A.2d 783 (1993).

Furthermore, because our resolution of the plaintiffs' claim requires the application of a statutory provision, namely, § 22a-349, to a specific factual scenario, we are also guided by well established tenets of statutory interpretation. "It is fundamental that statutory construction requires us to ascertain the intent of the legis-

---

[25] As we stated in *Cannata* v. *Dept. of Environmental Protection*, supra, 215 Conn. 627, "[w]hether the plaintiffs' proposed activity within the stream channel encroachment lines is a placement of an 'obstruction or encroachment' requiring them to obtain a permit pursuant to § 22a-342 and whether the plaintiffs' proposed use of their land is an 'agricultural or farming' use within § 22a-349 are factual determinations best left to the commissioner. This is precisely the type of situation that calls for agency expertise. Relegating these determinations to the commissioner in the first instance will provide a complete record containing the commissioner's interpretation of the relevant statutory provisions for judicial review."

lature and to construe the statute in a manner that effectuates that intent." (Internal quotation marks omitted.) *Starr* v. *Commissioner of Environmental Protection*, 236 Conn. 722, 737, 675 A.2d 430 (1996). "In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Fleming* v. *Garnett*, 231 Conn. 77, 92, 646 A.2d 1308 (1994); *State* v. *Metz*, 230 Conn. 400, 409, 645 A.2d 965 (1994). Furthermore, in construing this statute, we are mindful that exemptions to statutes are to be strictly construed. *Conservation Commission* v. *Price*, 193 Conn. 414, 424, 479 A.2d 187 (1984); *Aaron* v. *Conservation Commission*, 183 Conn. 532, 549, 441 A.2d 30 (1979). Finally, common sense must be used in statutory interpretation, and "courts will assume that the legislature intended to accomplish a reasonable and rational result." (Internal quotation marks omitted.) *Elliot* v. *Sears, Roebuck & Co.*, 229 Conn. 500, 515, 642 A.2d 709 (1994); *State* v. *Hinton*, 227 Conn. 301, 320, 630 A.2d 593 (1993).

Applying these principles, we are persuaded, as was the trial court, that the commissioner reasonably concluded that the clear-cutting of the plaintiffs' fifty-five acres of floodplain forest in order to develop farmable land is not the type of land use that the legislature contemplated to be eligible for an exemption under § 22a-349. In reaching this conclusion, we look for guidance to General Statutes § 1-1 (q), which defines the words "agriculture" and "farming" to "include cultivation of the soil, dairying, forestry, raising or harvesting any agricultural or horticultural commodity . . . the operation, management, conservation, improvement or maintenance of a farm . . . or salvaging timber or

cleared land of brush or other debris left by a storm, as an incident to such farming operations . . . the production or harvesting of . . . any agricultural commodity, including lumber, as an incident to ordinary farming operations . . . ." We agree with the commissioner that the large-scale clear-cutting of forest land, undertaken solely to prepare the land for farming and otherwise unrelated to any agricultural endeavor, including forestry, is not of the same kind or character as the activities enumerated in § 1-1 (q). See *Paige v. Town Plan & Zoning Commission*, 235 Conn. 448, 457, 668 A.2d 340 (1995). As the commissioner concluded in rejecting the plaintiffs' claim under § 22a-349, "[t]he clear-cutting proposed [by the plaintiffs] is not 'forestry,' which, according to Webster's Seventh New Collegiate Dictionary, is the 'science of developing, caring for, or cultivating forests' or the 'management of growing timber.' Nor is the clear-cutting a salvaging operation incidental to a farming operation. Nor does it involve harvesting or producing a tree-related agricultural commodity in the course of a farming operation. Indeed, the [plaintiffs] view the floodplain forest on their property not as an agricultural commodity[26] but as an *obstacle* to the production of agricultural commodities—an obstacle the [plaintiffs] seek to *eliminate in order to allow them to commence the production of agricultural commodities, namely, hay and vegetables.*" (Emphasis in original.)

Furthermore, in light of the magnitude of the clear-cutting contemplated by the plaintiffs, it is apparent that their proposal, if effectuated, would drastically and permanently change the topography of their fifty-five acres of floodplain forest. While readying land to make

---

[26] The commissioner noted that "[a] commodity is '(1) (a): convenience, advantage, (b): something useful or valuable, (2): an economic good as (a): a product of agricultural or mining, (b): an article of commerce.' Webster's Seventh New Collegiate Dictionary."

it suitable for farming may, in some circumstances, constitute a farming or agricultural use exempt from regulation under § 22a-349, a preparatory activity that changes the essential nature and character of the property does not.[27]

In addition, the interpretation of § 22a-349 urged by the plaintiffs would, in effect, allow a property owner to circumvent the § 22a-342 permit process, without regard to ecological considerations, any time a landowner expressed an intention to convert his or her property to a farming or agricultural use. "[T]he intent of the legislature is to be found not in an isolated phrase or sentence but, rather, from the statutory scheme as a whole." *State* v. *Breton*, 235 Conn. 206, 226, 663 A.2d 1026 (1995); see also *Fleming* v. *Garnett*, supra, 231 Conn. 90 ("[i]n determining the meaning of a statute, [it] must be considered as a whole, with a view toward reconciling its separate parts in order to render a reasonable overall interpretation [internal quotation marks omitted]"). The statutory construction espoused by the plaintiffs would be inconsistent with the public policy, clearly enunciated in § 22a-342, against unreasonable encroachments on our floodplains and inland waterways.

Finally, a review of the relevant legislative history supports our conclusion that the commissioner's decision was neither arbitrary nor unreasonable. For example, in his remarks to the legislature concerning the scope of the exemption, Representative Rufus Allyn stated that "[t]he establishment of stream channel encroachment lines in the Connecticut streams have

---

[27] The commissioner did not determine, and we do not suggest, that the cutting of trees on property located within stream channel encroachment lines can never constitute a farming or agricultural use. We conclude, rather, that the commissioner reasonably determined that the nature and extent of the clear-cutting proposed by the plaintiffs places that activity outside the purview of the exemption contained in § 22a-349.

left farmers who own farms or such land in a position of uncertainty regarding the future ability to use such land for its full farming potential. No assurances have ever been provided that they may continue to carry on *normal farming activities* without future restrictions. This Bill allows them to build fences and continue *other farming activities* on such land . . . ." (Emphasis added.) 18 H.R. Proc., Pt. 4, 1975 Sess., pp. 1914–15. This statement of legislative purpose is inconsistent with the plaintiffs' claim that the clear-cutting of fifty-five acres of floodplain forest to render it suitable for farming activities is itself an exempt farming or agricultural use under § 22a-349.

The judgment is affirmed.

In this opinion the other justices concurred.