[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action was instituted by Patricia A. and Raymond L. Conrad, residential property owners in the Town of South Windsor against their neighbors, Jeffrey S. and Mary Mattis, the Town of South Windsor and certain town officials alleging violation of a Conservation Easement ("Easement") extending over their properties which are parts of a subdivision known as Podunk River Estates. The three count complaint alleges, inter alia that the Mattis's have clear-cut trees, dumped soil and created structures on their property, within the Easement in violation of the requirement in the Easement to maintain the natural scenic and open condition of the property and that the Town and its officials have failed to enforce these provisions. Subsequently the five CT Page 15770 adjoining property owners in the subdivision, all of whose properties are covered by the Easement became party defendants.
Trial took place August 10 and 16 with final memoranda of law dated August 25, 2000.
Issues of standing and governmental immunity discussed in the pleadings and early memoranda of law have been waived or not being pressed, all the parties, including the Town, having stipulated that this action is to be treated as one seeking a declaratory judgment interpreting the Easement with respect to the rights of individual property owners to cut down trees and to maintain gardens, lawns, riding trails and ski trails within the area of the Easement. Other claims of violations alleged in the complaint including the creation of structures by the Mattis's have either been cured or are not being pressed.
It is found that all the conditions for a declaratory judgment set forth in Practice Book § 17-55 have been met.
 I.
The parties have entered successive stipulations of facts dated July 10, and July 28, 2000, which together with the exhibits and oral testimony form the basis of the following brief summary of facts.
William E. and Martha M. Aman, two of the intervening defendants are the owners of Will Mar Construction Corporation, the developer of seven residential lots known as Podunk River Estates. The Amans purchased the tract of land with the intention of maintaining horses, raising goats, planting orchards and gardens, establishing walking and riding trails, building a pond and conducting other nature friendly activities.
The Amans drafted the Easement dated September 15, 1986, which was discussed before South Windsor Planning and Zoning Commission and the Inland Wetlands Agency/Conservation Commission and duly recorded in Vol. 467 at page 150 of the South Windsor Land Records. The Easement was required by these town agencies as a condition of subdivision approval and its purpose was in large part to prevent the subdivision of the large lots in the subdivision into smaller lots. The lot retained by the Amans consists of over 60 acres, and lots owned by the Conrads and the Mattis's consist of 2.75 acres each, having a depth of 600 feet of which the rear halves are subject to the Easement.
Various complaints have been made over the years about violations taking place on the Conrad and Mattis properties but they play no significant role in the resolution of the present action for declaratory CT Page 15771 judgment.
Likewise, there is a long history of discussions before the two town commissions, including the language to be used or rejected in the Easement but this effort to invoke these discussions as a kind of "statutory history" has little bearing on the resolution of this action, because the language of the Easement speaks for itself and contains no ambiguity requiring resort to this history except as to certain stipulated background facts. Although the Town has a standard form for conservation easements authorized by General Statutes § 47-42a, b, and c, that form was not used in this case and differs in several respects from the Easement which is the subject of this action.
 II
The remaining dispute in this case arises from plaintiffs' objection to the maintenance of a vegetable garden by the defendant Mattis within the Easement area on his lot and certain tree cutting, brush and stump removal and grass seeding of certain cleared areas.
The language of the Easement pertinent to this action is as follows:
 I. All Lots shall be developed and used only for residential purposes. Expressly permitted as an accessory use shall be the care and keeping of farm animals, including horses, subject to the zoning regulations of the Town of South Windsor.
 II. Conservation Easement. Grantor does hereby create a conservation easement on those portions of the Lots designated as "Conservation Easement" as more particularly set forth on the Map (collectively the "Easement Area"). The purpose of this easement is to perpetually retain the Easement Area predominantly in its natural, scenic and open condition and to protect the natural and watershed resources of the Town of South Windsor pursuant to the provisions of Sections 47-42a, 47-42b and 47-42c
of the Connecticut General Statutes.
 The Grantor, for itself, its successors and assigns, agrees that it will not do any of the following activities on the Easement Area: (a) the construction or placing of buildings, roads or other structures or signs or billboards; (b) the dumping or placing of soil or other substance CT Page 15772 material as landfill, or the dumping or placing of trash, waste or other unsightly material; (c) the clear-cutting of live trees; (d) activities detrimental to drainage, flood control, water conservation, soil conservation or wildlife; (e) use of motorized recreational vehicles or other motorized recreational equipment; and (f) any other acts or uses detrimental to retention of the Easement Area in its natural, scenic and open condition.
 The Grantor reserves the right to itself, its successors and assigns, to continue to use the Easement Area for any uses and purposes which do not interfere with the purpose for which this easement is granted, including, but not limited to: (a) farming, the grazing of farm animals, gardening and outdoor recreational activities, including field trials, nature study, horseback riding, cross country skiing and fishing; (b) farm ponds of 3 acres or less, fill to remain on the applicable Lot; (c) other ponds, subject to review and approval by the Inland-Wetlands Commission of the Town of South Windsor; (d) Jogging or horseback riding trails and paths; (e) maintenance or retention of any water drainage system.
Plaintiff's claim that the establishment of the garden required the cutting of trees, the removal of natural brush and spreading of top soil and the maintenance of the garden involves the use of motorized vehicles and the confined removal of sapling trees, native shrubs and weeds. They claim these activities violate the state purpose of the Easement to perpetually retain the Easement area predominantly in its natural, scenic and open condition. They claim further that the cutting of trees violates the prohibition against "the clear-cutting of live trees."
 III
In the absence of any legal restriction, a landowner undoubtedly has the right to grow and cut down trees on his property. The only prohibition against the cutting of trees in the Easement is "the clear-cutting of live trees". The discussion before the town's agencies and the testimony of Jeffrey Folger the Town environmental planner and conservation officer discloses some differences of opinion as to the exact definition of "clear-cutting". Sec. 2.1.E. of the South Windsor Inland Wetland/Watercourse and Regulations defines "clear-cutting" as CT Page 15773 "the harvest of timber in a fashion which removes all trees in excess of two (2) inch caliper". The University of Connecticut Cooperative Extension Service defines "clearcut" as "the harvest of all trees on a given area". The only dictionary definition found, that in Websters Ninth New Collegiate Dictionary, defines "clear-cutting" as "the removal of all the trees in a stand of timber." This Court concludes that "clear-cutting" this is a term used to describe the practice of cutting down trees for commercial purpose in an area in such a manner as to leave virtually no trees left in the area except those unsuitable for commercial purposes. The number, height and dimension of the remaining trees, under the various definition of clear-cutting may differ, but it is certain that the selective clearing of trees for a reasonably sized garden area in a large lot does not constitute "clear-cutting."
The area of the garden on the Mattis's lot is approximately 70 by 100 feet or 7,000 square feet, representing some twelve percent of the 60,000 square feet of the area covered by the Easement and six percent of the total area of the Mattis's lot.
This is hardly the kind of clear-cutting found to be objectionable by our Supreme Court in Cannata v. Dept. of Environmental Protection,239 Conn. 124, (1996) sustaining the Commission's conclusion that the clear-cutting of a 55 acre flood plain forest did not fall within the exemption of General Statutes § 22a-349.
The Easement of course specifically permits the use of the affected land for farming and gardening, as well as jogging and horseback riding trails and paths. All of these permitted uses necessitate the removal of some trees and brush in order to make room for a garden or to make trails and paths safe and free from obstruction. The occasional use of motorized equipment in this process is reasonable and does not violate the restriction in Easement against motorized recreational vehicles or equipment.
At its March 17, 1999 meeting of the Inland Wetlands/Conservation Committee confirmed that the creation of the Mattis' garden was permitted under the terms of the Easement. This is significant because the Easement specifically authorizes the Town, "its duly elected or appointed officials, its employees and agents," to enter the Easement area "for the purpose of inspecting the Easement area and enforcing the provisions of this Easement." This commendable practice of seeking approval of the appropriate town agency before establishing a garden ensures a reasonable interpretation of its size and location and the scope of any necessary tree cutting or brush removal.
As against these considerations, plaintiffs further argue that the CT Page 15774 creation of a vegetable garden violates the purpose of the Easement "to perpetually retain the Easement Area predominately in its natural, scenic and open condition."
The creation and maintenance of a vegetable garden does not violate this purpose. A garden is natural, scenic and open and specifically permitted by the Easement and within the original intention of the developer. Even if the term "natural" is construed to exclude a garden because of the artificial aspects of clearing, planting, watering and weeding or if the term "scenic" is construed to favor trees and brush over a garden, the garden in this case would not detract from the "predominance" of the remaining natural and scenic condition. Photographs, in evidence, of the garden established on the Mattis property taken from several views, show that the area, as a whole, retains its woodland character.
 IV
It is concluded that the selective removal of trees is permitted for reasons of safety or disease control or because such removal is necessary to effectuate any of the uses specifically authorized in the Easement. It is further concluded that before any authorized use is initiated, which would make any significant change in the nature, scenic or open condition of the Easement area, permission should be sought from the appropriate official or agency of the Town of South Windsor.
Wagner, JTR