### BRUCE HILL *v.* STATE EMPLOYEES RETIREMENT COMMISSION
### (AC 24478)

Lavery, C. J., and Schaller and Peters, Js.

Argued March 30—officially released June 29, 2004

*Mark E. Merrow*, for the appellant (plaintiff).

*Thadd A. Gnocchi*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney

general, and *William J. McCullough,* assistant attorney general, for the appellee (defendant).

*Opinion*

PETERS, J. Under specified circumstances, General Statutes § 5-192p authorizes the state employees retirement commission (commission) to grant a disability retirement pension to a person in state service. An applicant who has been in state service for less than ten years is entitled to such a pension only if the applicant has suffered a disability that is service connected. To determine the requisite service connection, the retirement commission is directed by § 5-192p (f) to utilize the expertise of the state medical examining board (medical board). The principal issue in this case is whether a pension applicant who is disappointed by an adverse decision of the medical board has a right to review by the commission to determine whether, as a matter of law, the medical board was precluded from making an independent determination of service connection in light of earlier workers' compensation proceedings arising out of the same facts. We affirm the judgment of the trial court dismissing the pension applicant's administrative appeal, but we do so on grounds other than those on which the court relied.

The plaintiff, Bruce Hill, filed an appeal in the Superior Court from a declaratory ruling by the defendant commission, which had denied his request for service connected disability retirement benefits. The commission based its ruling on a finding by the medical board that the plaintiff had not established that his injury was service connected. He alleged that he was nonetheless entitled to such benefits because he had been injured in an accident that, in workers' compensation proceedings, had been determined to be service connected. In light of that determination, the plaintiff maintained that the doctrine of collateral estoppel precluded the medi-

cal board from making a contrary finding and required the commission to grant his application for disability retirement benefits.

The trial court upheld the commission's denial of the plaintiff's pension application. It agreed with the commission that the governing statute conferred exclusive authority on the medical board to determine whether an employee's injury was service connected, a predicate for entitlement to disability retirement benefits. Concluding that the commission lacked subject matter jurisdiction to review the merits of the medical board's finding, the court dismissed the plaintiff's appeal.

In his appeal to this court, the plaintiff maintains that the trial court improperly failed (1) to overrule the commission's determination that it lacked jurisdiction to review the medical board's finding that he failed to prove that his injury was service connected, (2) to apply the doctrine of collateral estoppel and (3) to protect his constitutional right to due process. Because each of these issues raises a question of law, our review is plenary. See, e.g., *DaCruz* v. *State Farm Fire & Casualty Co.*, 268 Conn. 675, 686, 846 A.2d 849 (2004) (collateral estoppel); *State* v. *Long*, 268 Conn. 508, 520–21, 847 A.2d 862 (2004) (due process); *Lundborg* v. *Lawler*, 63 Conn. App. 451, 455, 776 A.2d 519 (2001) (subject matter jurisdiction). Although we agree with the plaintiff's jurisdictional claim, we disagree with his collateral estoppel and due process claims. Accordingly, we affirm the judgment of the trial court. See *Favorite* v. *Miller*, 176 Conn. 310, 317, 407 A.2d 974 (1978) ("[w]here the trial court reaches a correct decision but on mistaken grounds, [the Supreme] [C]ourt has repeatedly sustained the trial court's action if proper grounds exist to support it").

To evaluate the plaintiff's arguments, we must review the factual record and the procedural history of this case. There is no dispute about either one.

The plaintiff was employed by the state of Connecticut state receiving home from December 14, 1990, through 1997. During that time, he injured his right shoulder twice.

The first injury to his right shoulder, on August 17, 1997, was not work related. It occurred in a flag football game. After sustaining the injury, the plaintiff immediately consulted a physican at New Britain General Hospital to obtain pain relief medication. He did not report for work the following day.

The second injury to the same shoulder, on September 18, 1997, occurred on the work site when the plaintiff was trying to fix a hatchway. He consulted a physician one week later. He notified his supervisor of his injury on September 29, 1997.[1] Despite his injury, he continued to work until October 9, 1997. In December, 1997, the plaintiff underwent surgery to correct the right rotator cuff injury that he had sustained, but the surgery was not successful.

In the course of workers' compensation proceedings, the state accepted the plaintiff's claim for workers' compensation for his work site injury. It signed a voluntary agreement acknowledging that the plaintiff had suffered a 21.5 percent permanent impairment of his right shoulder as the result of his September 18, 1997 injury and that this injury arose out of and in the course of his employment.

The plaintiff then filed an application for disability retirement benefits under General Statutes § 5-169. His eligibility for such benefits depended on his ability to

---

[1] According to the medical board, this notification did not occur until October 3, 1997.

establish that his injury was service connected. General Statutes § 5-192p.

The medical board that considered the plaintiff's application for disability retirement benefits found initially and upon reconsideration that the plaintiff had not shown that his injury was service connected. It noted the plaintiff's prior injury at the football game, his delay in informing his supervisor of his injury at the work site and his performance of his work for several days subsequent to the date of his injury.

The plaintiff tried unsuccessfully to challenge the medical board's decision by way of a direct appeal to the Superior Court. The court held that it lacked subject matter jurisdiction of his case because § 5-169 (c) does not require the medical board to hold a hearing. See *Bailey* v. *Medical Examining Board for State Employee Disability Retirement*, 75 Conn. App. 215, 223, 815 A.2d 281 (2003). As the court held, without a requirement for a hearing, an administrative decision is not a contested case, as that term is defined by General Statutes § 4-166 (2), and therefore is not appealable. See General Statutes § 4-166 (3) (A) and (C); *Lewis* v. *Gaming Policy Board*, 224 Conn. 693, 699–700, 620 A.2d 780 (1993).

Without seeking appellate review of that dismissal, the plaintiff petitioned the commission for a declaratory ruling that the doctrine of collateral estoppel required the medical board to find that his injury was service connected. The commission decided that it did not have jurisdiction to review the plaintiff's claim on its merits because, in its view, § 5-192p (f) conferred on the medical board the exclusive authority to determine whether the plaintiff's injury was service connected. Accordingly, it issued a declaratory ruling denying the plaintiff's request for disability retirement benefits.

The plaintiff then returned to the Superior Court, in the case that is presently before us, to challenge the validity of the declaratory ruling by the commission. This time, the trial court had jurisdiction to entertain the appeal because a declaratory ruling is appealable whether or not it arises in a contested case. General Statutes §§ 4-176 (h) and 4-183.

The trial court upheld the commission's interpretation of the relevant statutes. It held that the commission lacked subject matter jurisdiction to review the merits of the decision of the medical board. Accordingly, it rendered a judgment dismissing the plaintiff's appeal.

I

JURISDICTION

The plaintiff's principal argument for reversal of the judgment of the trial court is that the court improperly dismissed, on the basis of the commission's lack of subject matter jurisdiction, his claim that the medical board was required, because of collateral estoppel, to find his injury to have been service connected. The trial court held that "the posture of this case as an appeal from a declaratory ruling does not present the opportunity for the frontal attack on the decision of the medical examining board that the plaintiff attempts." We disagree with the court's reasoning.

The plaintiff raises two arguments with respect to his jurisdictional claim. He asserts that the trial court should have addressed the merits of his claim of collateral estoppel because the commission (1) acting in response to a petition for a declaratory ruling, has plenary statutory authority to determine any pension issue presented therein and (2) acting as the ultimate adjudicator of pension rights, has plenary statutory authority to decide an issue of law.

A

The plaintiff's first and broader argument is that, contrary to the view of the trial court, "the analysis remains the same whether the ultimate responsibility for determining disability retirement eligibility rests with the [commission] or with the [medical board]." For present purposes, he does not challenge the ruling that an administrative decision that is not the result of a contested case is not reviewable *directly* under § 4-166 (3) (A). He maintains instead that such a ruling is reviewable *indirectly* under §§ 4-176 (h) and 4-166 (3) (B). In his view, his claim of collateral estoppel is entitled to commission review, and then to judicial review, because the commission has plenary authority to consider the merits of any issue raised in a petition for a declaratory ruling.

On its face, this argument is difficult to sustain. If the plaintiff were correct, it would mean that the appealability of an administrative decision would be determined by the manner in which the appeal is packaged. We should not assume that our legislature would have intended such an irrational result. "[W]e read each statute in a manner that will not thwart its intended purpose or lead to absurd results." (Internal quotation marks omitted.) *Cardenas* v. *Mixcus*, 264 Conn. 314, 322–23, 823 A.2d 321 (2003).

The plaintiff's argument is premised on the implicit assumption that a petitioner for a declaratory ruling may obtain relief for any claim of any kind that he or she may choose to present to an administrative agency. That is not so. Section 4-176 (a) states the ground rules that govern declaratory rulings. It provides in relevant part: "Any person may petition an agency . . . for a declaratory ruling as to the validity of any regulation, or the applicability to specified circumstances of a provision of the general statutes, a regulation, or a final

decision on a matter within the jurisdiction of the agency." General Statutes § 4-176 (a). Subsection (h) of § 4-176, on which the plaintiff relies, describes the manner in which a declaratory ruling may be preserved for judicial review, but, in our view, that subsection cannot reasonably be read to enlarge the scope of § 4-176 (a). See *Blakeman* v. *Planning & Zoning Commission*, 82 Conn. App. 632, 639, 846 A.2d 950 (2004) ("[a] court must interpret a statute as written . . . and it is to be considered as a whole, with a view toward reconciling its separate parts in order to render a reasonable overall interpretation" [internal quotation marks omitted]). Section 4-183 (j), on which the plaintiff also relies, describes the scope of judicial review of administrative decisions, but does not purport to describe the jurisdiction of the Superior Court to undertake such a review.

The plaintiff has not argued that § 4-176 is ambiguous in any respect or that its legislative history suggests that it should not be interpreted literally. The applicable principles of statutory interpretation counsel us, therefore, to apply the terms of the statute literally. See *Joyell* v. *Commissioner of Education*, 45 Conn. App. 476, 486, 696 A.2d 1039 ("[w]here, as here, the language of a statute is clear and unambiguous, courts may not by construction supply omissions in a statute merely because the court feels that it has good reasons for doing so and that the statute would thereby be improved"), cert. denied, 243 Conn. 910, 701 A.2d 330 (1997).

The plaintiff has not explained how his claim of collateral estoppel presents an issue that falls within the limitations that § 4-176 imposes on the permissible scope of declaratory rulings. He does not allege that he has challenged "the validity of any regulation, or the applicability to specified circumstances of a provision of the general statutes, a regulation, or a final decision . . . ." General Statutes § 4-176 (a). His case is readily

distinguishable from declaratory rulings that appropriately have addressed matters such as the jurisdictional consequences of statutory time limitations; see *Angelsea Productions, Inc.* v. *Commission on Human Rights & Opportunities*, 248 Conn. 392, 397–98, 727 A.2d 1268 (1999); or the applicability of statutory permit requirements. See *Cannata* v. *Dept. of Environmental Protection*, 239 Conn. 124, 135, 680 A.2d 1329 (1996).

Our research has not uncovered any Connecticut case law discussing the merits of a declaratory ruling that did not involve the interpretation of a statute or a regulation. Our view of the limited scope of declaratory rulings finds support, however, in the judgments of courts in other jurisdictions. These courts have held that an administrative agency's declaratory ruling provides an occasion for testing the validity or applicability of a statute or regulation, but not for the review of prior administrative decisions. See, e.g., *Women Aware* v. *Reagen*, 331 N.W.2d 88, 92 (Iowa 1983); *Texas County Irrigation & Water Resources Assn.* v. *Oklahoma Water Resources Board*, 803 P.2d 1119, 1123–24 (Okla. 1990).

B

The plaintiff's second and narrower jurisdictional argument rests on his contention that, when eligibility for a disability retirement pension turns on a question of law, §§ 5-169 (c) and 5-192p (f) confer independent statutory authority on the commission to determine eligibility. The trial court, however, upheld the commission's decision that the legislature categorically had assigned exclusive responsibility to the medical board to determine, under any and all circumstances, whether an applicant's injury was service connected. We agree with the plaintiff.

The commission's declaratory ruling discussed the reasons for its conclusion that it had no jurisdiction to review the decision of the medical board. It compared

the language of §§ 5-169 (c) and 5-192p (f) with that contained in other statutes describing eligibility for different retirement benefits. It attached significance to the fact that those statutes, in contrast to the statutes governing disability retirement benefits, expressly authorized the commission to determine pension eligibility. See General Statutes §§ 7-432 and 45a-40.

The commission further held that the medical board had exclusive jurisdiction to determine eligibility for disability retirement pensions even when the issue raised by the applicant for pension benefits did not contest a *medical* finding. In a carefully nuanced decision, the commission acknowledged that the medical board did not have all encompassing authority to decide all issues of pension eligibility. It held, for example, that the commission itself, and not the medical board, had the responsibility to determine whether an applicant for pension benefits was a member of a particular pension plan. Nonetheless, it concluded that, under § 5-192p (f), for all purposes, the determination of whether an injury was service connected fell within the exclusive jurisdiction of the medical board.

The trial court declined to consider the merits of the plaintiff's collateral estoppel claim because, like the commission, it interpreted § 5-192p (f) to deprive the commission of authority to do so. Without discussing the distinctions enunciated by the commission, the court held that cases such as *Briggs* v. *State Employees Retirement Commission*, 210 Conn. 214, 219, 554 A.2d 292 (1989), and *Tremblay* v. *Connecticut State Employees' Retirement Commission*, 170 Conn. 410, 414, 365 A.2d 1125 (1976), had established that the medical board "using its medical judgment, may believe or disbelieve any evidence presented so long as the final decision is supported by the substantial evidence rule." The court did not address the plaintiff's contention that § 5-192p (f) is inapplicable in cases in which the issue before

the medical board is one that does not call for the exercise of medical judgment.

In his appeal to this court, the plaintiff has raised again the jurisdictional issue of the scope of the authority vested in the medical board by § 5-192p (f). It is fair to say that this issue has been obscured by the lack of specificity with which it has been briefed. We may nonetheless infer from the administrative record, from the plaintiff's oral argument to the trial court and from his appellate brief disputing the relevance of *Briggs* that he challenges the competency of the medical board to decide an issue of law such as collateral estoppel.

We turn then to a consideration of whether § 5-192p (f), despite its sweeping delegation of authority to the medical board, contains a latent ambiguity with respect to its applicability to issues unrelated to the medical board's professional expertise. "Any latent ambiguity in the statutory language itself is normally resolved by turning for guidance to the legislative history and the purpose the statute is to serve." (Internal quotation marks omitted.) *Nicotra Wieler Investment Management, Inc.* v. *Grower*, 207 Conn. 441, 451, 541 A.2d 1226 (1988).

It is logical to assume that the legislature intended to designate the medical board as the sole arbiter of medical eligibility for disability retirement pension benefits so as to take advantage of the board's medical expertise. See *Briggs* v. *State Employees Retirement Commission*, supra, 210 Conn. 219. In our view, it is not logical to assume that the legislature also intended to mandate the same deference with respect to eligibility as a matter of law. Indeed, the commission recognized this distinction when it held that the medical board should not determine an applicant's membership in the applicable retirement pension program.

Our appellate courts previously have not considered the scope of the medical board's authority to resolve an issue that does not implicate the medical board's professional expertise. We are persuaded, however, that if, as the commission held, the medical board has no relevant expertise with regard to membership status, then it similarly lacks relevant expertise to decide complex issues of law. It is indisputable that applicability of the doctrine of collateral estoppel raises difficult issues on which medical training and practice shed no light. As far as the record shows, the medical board did not seek legal advice to assist it in its deliberations.

We conclude, therefore, contrary to the decision of the trial court, that the commission had jurisdiction to decide whether the medical board had exclusive authority to decide the plaintiff's eligibility for a disability retirement pension under the circumstances of this case. Although the plaintiff was not entitled to review by the commission, or by the court, of whether the medical board correctly decided that his injury was not in fact service connected, he was entitled to review of whether the doctrine of collateral estoppel precluded relitigation of this issue in light of the outcome of the earlier workers' compensation proceedings establishing service connection.

## II

### COLLATERAL ESTOPPEL

The substantive issue raised by the plaintiff is whether the retirement commission was required to approve his application for a disability retirement pension because the doctrine of collateral estoppel or issue preclusion required the medical board to find his injury to have been service connected. It is undisputed that, in an earlier workers' compensation proceeding arising out of the same injury, the state signed a voluntary agreement acknowledging that the plaintiff had suffered

a 21.5 percent permanent impairment of his right shoulder as the result of his September 18, 1997 injury and that this injury arose out of and in the course of his employment. In light of that acknowledgment, the plaintiff maintains that the medical board was precluded from finding that his injury was not service connected.

As a result of the trial court's jurisdictional ruling, it did not reach this issue. We might, therefore, remand this case to the court for further proceedings. In the interests of judicial economy, we have decided, however, to consider the merits of the plaintiff's collateral estoppel claim. If, as the commission argues, the doctrine of collateral estoppel is inapplicable, we can sustain the judgment of the trial court on this alternate ground. See *Skuzinski* v. *Bouchard Fuels, Inc.*, 240 Conn. 694, 703, 694 A.2d 788 (1997).

"[C]ollateral estoppel, or issue preclusion, is that aspect of res judicata that prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties or those in privity with them upon a different claim. . . . An issue is *actually litigated* if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. . . . 1 Restatement (Second), Judgments § 27, comment (d) (1982)." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Efthimiou* v. *Smith*, 268 Conn. 499, 506–507, 846 A.2d 222 (2004); *Rinaldi* v. *Enfield*, 82 Conn. App. 505, 516, 844 A.2d 949 (2004). However, "[i]n the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated." 1 Restatement (Second), supra, § 27, comment (e), p. 257.

We agree with the plaintiff that the fact that the prior action occurred in workers' compensation proceedings does not disqualify that action from having a preclusive

effect. The doctrine of collateral estoppel is applicable to administrative rulings in general. *Lafayette* v. *General Dynamics Corp.*, 255 Conn. 762, 773, 770 A.2d 1 (2001). The commission does not argue to the contrary.

We disagree, however, with the plaintiff's assumption that the workers' compensation proceedings in this case demonstrate that his claim of service connection between his injury and his work was actually litigated. The plaintiff's workers' compensation award arose out of a voluntary agreement in which the state *acknowledged* that the plaintiff's injury arose out of and in the course of his employment. In other words, the plaintiff's award arose out of a settlement between himself and the state.

Under the Restatement (Second), only an issue that has actually been litigated has a preclusive effect on subsequent litigation. An issue that has been resolved by virtue of a settlement agreement has not actually been litigated. 1 Restatement (Second), supra, § 27, comment (e). Although no Connecticut cases have so held, courts in other jurisdictions have declined to give preclusive effect to judgments approving a settlement agreement. See, e.g., *JFK Medical Center, Inc.* v. *Price*, 647 So. 2d 833, 834 (Fla. 1994); *Burgess* v. *Consider H. Willett, Inc.*, 311 Ky. 745, 748–49, 225 S.W.2d 315 (App. 1949); *Hentschel* v. *Smith*, 278 Minn. 86, 99–100, 153 N.W.2d 199 (1967); *Linder* v. *Missoula County*, 251 Mont. 292, 296–97, 824 P.2d 1004 (1992); *Deminsky* v. *Arlington Plastics Machinery*, 259 Wis. 2d 587, 621–22, 657 N.W.2d 411 (2003); *Eklund* v. *PRI Environmental, Inc.*, 25 P.3d 511, 518 (Wyo. 2001); see also 18A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure (2002) § 4443; but see, e.g., *Macheras* v. *Syrmopoulos*, 319 Mass. 485, 486, 66 N.E.2d 351 (1946).

On the record before us, we conclude that the plaintiff has not established his alleged right to a disability retire-

ment pension. As a matter of fact, pursuant to § 5-192p (f), the medical board had exclusive authority to decide whether his injury was service connected. As a matter of law, the medical board was not precluded from deciding the issue of service connection because that issue had not actually been litigated in prior workers' compensation proceedings.[2]

It follows that the commission's declaratory ruling properly denied the plaintiff's application for a disability retirement pension. It further follows that the court properly dismissed the plaintiff's administrative appeal.

## III

## DUE PROCESS

The plaintiff's final argument is that the denial of his application for a disability retirement pension violated his constitutional right to due process. It is undisputed that, if he complies with the governing statutory conditions, he has a constitutionally protected property right to a pension benefit. *Pineman* v. *Oechslin*, 195 Conn. 405, 416–17, 488 A.2d 803 (1985); see also C. Reich, "The New Property," 73 Yale L.J. 733 (1964). He alleges that this property right was impaired by numerous procedurally unconstitutional defects in the manner in which it was adjudicated. He faults the medical board for failing to hold a proper hearing in general and for failing to apply the doctrine of collateral estoppel in particular. He faults the trial court for limiting its review of the commission's declaratory ruling. We are per-

---

[2] In light of this conclusion, we need not consider the merits of two other arguments that the commission has proffered in defense of its decision to deny disability retirement benefits to the plaintiff. One is that the record does not establish the identity of the parties, which is another prerequisite to the applicability of collateral estoppel. The other is that the legislature, in enacting § 5-192p (f), made a public policy decision to confer dispositive authority on the medical board regardless of the outcome of related prior proceedings elsewhere.

suaded that the plaintiff was not deprived of his constitutional right to procedural due process.

As the commission properly notes, the plaintiff never raised any constitutional issue in the trial court. We need not review the merits of any claim, even a constitutional claim, that is presented for the first time on appeal. Practice Book § 60-5; *Lopiano* v. *Lopiano*, 247 Conn. 356, 372–73, 752 A.2d 1000 (1998).

Summary review of the plaintiff's constitutional claims demonstrates their lack of merit. It bears remembering that "[j]udicial review of an administrative decision is a creature of statute." *Summit Hydropower Partnership* v. *Commissioner of Environmental Protection*, 226 Conn. 792, 799, 629 A.2d 367 (1993). It is abundantly clear that the plaintiff does not have a constitutional right (1) to challenge the procedural sufficiency of the medical board hearing in the absence of a record of what transpired there, (2) to command acquiescence in his interpretation of the relevant statutes or (3) to disregard common-law limitations on the doctrine of collateral estoppel.

We conclude, therefore, that the trial court properly dismissed the plaintiff's administrative appeal from the declaratory ruling by the commission.

The judgment is affirmed.

In this opinion the other judges concurred.