### EDWARD A. PERUTA *v.* COMMISSIONER OF PUBLIC SAFETY ET AL.
### (AC 31142)

DiPentima, C. J., and Harper and Pellegrino, Js.

Argued January 4—officially released May 24, 2011

*Rachel M. Baird,* for the appellant (plaintiff).

*Matthew B. Beizer,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* former attorney general, for the appellants (defendants).

DiPENTIMA, C. J. The plaintiff, Edward A. Peruta, appeals from the judgment of the trial court granting the defendants' motion to dismiss his complaint for lack of subject matter jurisdiction. On appeal, the plaintiff claims that the court improperly determined that (1) he had failed to exhaust his administrative remedies and (2) the administrative remedies available to him were not inadequate and futile. We affirm the judgment of the trial court.

The record reveals the following facts and procedural history relevant to our discussion.[1] The plaintiff travels throughout the state and possesses a permit to carry pistols or revolvers (permit) issued by the department of public safety (department) pursuant to General Statutes § 29-28 (b). On July 28, 2007,[2] the plaintiff sent an e-mail to the department and to the board of firearms permit examiners (board) stating that he was researching the laws and regulations that govern the possession of a permit to carry a firearm and set forth nine questions seeking to clarify the extent to which the holder of a valid permit may openly carry a firearm in the state.[3] The plaintiff delivered a document with

---

[1] The record includes, inter alia, the complaint, the evidence submitted at the March 12, 2009 hearing, affidavits and the court's memorandum of decision.

[2] Although the document contained in the record is dated July 28, 2006, at oral argument before this court the plaintiff asserted that the correct date the e-mail was sent was June 28, 2007. In the record, however, the plaintiff's amended second affidavit states that the correct date this e-mail was sent was July 28, 2007. The plaintiff's brief to this court also states the correct date as July 28, 2007. We take the date set forth in the plaintiff's amended second affidavit to be the correct date.

[3] In his e-mail, the plaintiff asked the following questions: (1) "What state statute(s), regulation(s), policies or case law(s) mandates concealment of a firearm while being carried by an individual in possession of a valid license to carry same?"; (2) "What state statute(s), regulation(s), policies or case law(s) prevents the wearing of an exposed firearm while being carried by an individual in possession of a valid license to carry same?"; (3) "What state statute(s), regulation(s), policies or case law(s) establish the standards for concealment of a firearm while being carried by an individual in posses-

these same questions to the department on July 30, 2007. In response, the department's legal affairs unit sent a letter to the plaintiff on August 1, 2007, stating that it was unable to provide answers to his questions and recommended that he seek the advice of an attorney.[4]

Thereafter, the plaintiff commenced an action for a declaratory judgment in the Superior Court naming three defendants: the department, the board and the police officer standards and training council (council).[5]

_____

sion of a valid license to carry same?"; (4) "What state statute(s), regulation(s), policies or case law(s) establishes the simple act of carrying of a holstered firearm, by an individual in possession of a valid permit/license to carry same, into a restaurant as an element of a crime?" (5) "What state statute(s), regulation(s), policies or case law(s) establishes the simple act of carrying of a holstered firearm, by an individual in possession of a valid permit/license to carry same, into an establishment that serves alcoholic beverages, (such as a bar or restaurant), as an element of a crime?"; (6) "Is there any existing criminal case law where the simple act of carrying of a concealed holstered firearm, (by an individual in possession of a valid permit/license to carry same), into a restaurant meets the necessary elements contained in [General Statutes §] 53a-181—Breach of peace in the second degree?"; (7) "Is there any existing criminal case law on the simple act of carrying of an exposed, holstered firearm, (by an individual in possession of a valid permit/license to carry same), into a restaurant meets the necessary elements contained in [§] 53a-181—Breach of the peace in the second degree?"; (8) "What state statute(s), regulation(s), policies, case law(s) or situations grant or provide the authority to a local police officer or department to seize and/or confiscate a pistol permit from the holder of same?"; (9) "What state statute(s), regulation(s), policies, case law(s) or situations grant or provide the authority to a local police officer to determine 'MATURE JUDGMENT' as the phrase pertains to carrying a firearm by a person permitted or licensed to do so?"

[4] The plaintiff also sent an e-mail document entitled "Request and [P]etition for Review, [I]nvestigation and Declaratory Ruling Reg. Section 29-32b-15" to the board on August 6, 2007, wherein he asked whether a valid permit holder may openly carry a firearm in the state. By e-mail, the board declined to issue a declaratory ruling stating that the plaintiff's request did not conform to the requirements of § 29-32b-15 of the Regulations of Connecticut State Agencies. The plaintiff subsequently filed another such document with the board, which the board declined to address, stating that such a "ruling on the petition as presented . . . would be inappropriate."

[5] The department is created pursuant to General Statutes § 29-1b (a). The board is an administrative body that exists within the department; see

In his complaint, the plaintiff asserted that the department and the municipalities served by the council had violated the statutory and constitutional rights of Connecticut citizens to bear arms by prohibiting, under threat of arrest, valid permit holders from openly carrying a pistol or revolver and by immediately confiscating a holder's valid permit upon such arrest. The plaintiff alleged that the board had denied his request for a declaratory ruling, and, consequently, he suffered from uncertainty with respect to his legal obligations to conceal his firearm and relinquish, upon demand, his permit to the department. Thus, the plaintiff requested a judicial determination of whether he lawfully could carry a pistol or revolver openly in the state and whether the defendants lawfully may confiscate permits if a permit holder is arrested for openly carrying a firearm. The plaintiff served a copy of his complaint on the office of the attorney general.

The defendants, represented by the attorney general's office, filed a motion to strike the plaintiff's complaint, which the court denied. Thereafter, the defendants filed a motion to dismiss the plaintiff's complaint claiming, inter alia, that the court should exercise its discretion and refuse to issue a declaratory judgment because the plaintiff had adequate administrative remedies available to him. After a hearing on the matter and after both parties filed supplemental briefs, the court granted the defendants' motion to dismiss. The court reasoned that although the plaintiff had presented a petition for a declaratory ruling to the board, which had declined to rule on the matter, the department had a central role to play in deciding the petition and should be given an opportunity to do so. The court then determined that because the plaintiff had not submitted a petition to the

General Statutes § 29-32b; and the council is an administrative body that exists within the division of state police of the department. See General Statutes § 7-294b; see also General Statutes § 29-1zz.

department, he had not complied with General Statutes §§ 4-175 and 4-176. The court further concluded that because the plaintiff had only claimed that the department was "likely" to issue a ruling adverse to him, futility could not be established.

Thereafter, the plaintiff filed a motion to reargue claiming that the department's failure to promulgate rules of practice for filing requests for declaratory rulings acted as a waiver of its jurisdiction to issue such rulings and excused the plaintiff's failure to petition the department. The court summarily denied this motion. The plaintiff then filed a second motion to reargue claiming that the e-mail he sent to the department on July 28, 2007, was a valid petition for a declaratory ruling and because the department lacked rules of practice for submitting petitions for declaratory rulings, he had exhausted his administrative remedies to the extent possible. The court, however, denied the plaintiff's motion concluding that the overall thrust of the questions he presented to the department were not sufficient to satisfy the requirements of § 4-176.[6] The plaintiff then appealed to this court and, pursuant to Practice Book § 66-5, filed a motion for articulation with respect to the trial court's conclusion that his July 28, 2007 e-mail to the department was not a petition for a declaratory judgment.[7]

As a preliminary matter, we set forth our standard of review. "A motion to dismiss . . . properly attacks

---

[6] General Statutes 4-176 (a) provides: "Any person may petition an agency, or an agency may on its own motion initiate a proceeding, for a declaratory ruling as to the validity of any regulation, or the applicability to specified circumstances of a provision of the general statutes, a regulation, or a final decision on a matter within the jurisdiction of the agency."

[7] In its ruling, the court explained that it had concluded the plaintiff's July 28, 2007 e-mail to the department was not a request for a declaratory ruling because it was "not denominated a declaratory ruling, [it gave] no factual background, and lack[ed] any statement of position, factual or legal, on the appropriate declaratory ruling to be given."

the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Internal quotation marks omitted.) *C. R. Klewin Northeast, LLC* v. *State*, 299 Conn. 167, 174, 9 A.3d 326 (2010). "A motion to dismiss tests . . . whether, on the face of the record, the court is without jurisdiction. . . . When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts which are well pleaded, invokes the existing record and must be decided upon that alone." (Internal quotation marks omitted.) *State* v. *Marsh & McLennan Cos.*, 286 Conn. 454, 463–64, 944 A.2d 315 (2008). "[O]ur review of the trial court's ultimate legal conclusion and resulting [grant] of the motion to dismiss will be de novo. . . . Factual findings underlying the court's decision, however, will not be disturbed unless they are clearly erroneous. . . . The applicable standard of review for . . . a motion to dismiss, therefore, generally turns on whether the appellant seeks to challenge the legal conclusions of the trial court or its factual determinations." (Internal quotation marks omitted.) *LaSalle Bank, National Assn.* v. *Bialobrzeski*, 123 Conn. App. 781, 786–87, 3 A.3d 176 (2010). With these principles in mind, we turn to the plaintiff's claims.

I

The plaintiff first claims that the court erroneously concluded that he had failed to exhaust his administrative remedies. Specifically, the plaintiff argues that because the department has failed to promulgate rules setting forth the required form and filing procedure for

petitions for declaratory rulings in accordance with its duty under § 4-176 (b),[8] he was unable to know what the department required for such petitions. Therefore, according to the plaintiff, his July 28, 2007 e-mail to the department, to the extent possible, was a petition for a declaratory ruling.[9] We disagree.

Our Supreme Court has determined previously that whether a party's communication with an agency constitutes a petition for a declaratory ruling is "essentially [a] fact-based issue . . . ." See *Cannata* v. *Dept. of Environmental Protection*, 239 Conn. 124, 135 n.18, 680 A.2d 1329 (1996). We, therefore, will not disturb the court's conclusion unless it is clearly erroneous. Id.

The right to petition an agency for a declaratory ruling is statutorily granted to a party by § 4-176 (a). That section, in relevant part, provides: "Any person may petition an agency . . . for a declaratory ruling as to the validity of any regulation, or *the applicability to specified circumstances of a provision of the general statutes*, a regulation, or a final decision on a matter

[8] At oral argument before this court, the department conceded that it has not adopted rules or regulations establishing a prescribed form and filing procedure for petitions for declaratory rulings. Section 4-176 (b) provides: "Each agency shall adopt regulations, in accordance with the provisions of this chapter, that provide for (1) the form and content of petitions for declaratory rulings, (2) the filing procedure for such petitions and (3) the procedural rights of persons with respect to the petitions."

[9] We summarily reject the plaintiff's second claim that the department's failure to adopt rules of practice governing the submission of petitions for declaratory rulings constitutes a waiver of its jurisdiction to rule on such petitions. Section 4-176 statutorily enables a party to petition an agency for a declaratory ruling and imposes a duty on an agency to act pursuant to various deadlines upon the receipt of such a petition. See *Southern New England Telephone Co.* v. *Dept. of Public Utility Control*, 64 Conn. App. 134, 141, 779 A.2d 817 (2001), appeal dismissed, 260 Conn. 180, 799 A.2d 294 (2002). The plaintiff has provided this court with no legal support, and our review of the case law has uncovered none, for the novel contention that the rights granted to him by § 4-176 (a), and the duties imposed on the department by § 4-176 (c) through (j) are dependent on the department first promulgating rules pursuant to § 4-176 (b).

within the jurisdiction of the agency." (Emphasis added.) General Statutes § 4-176 (a). That section sets "the ground rules" for bringing a petition for a declaratory ruling before a state agency; see *Hill* v. *State Employees Retirement Commission*, 83 Conn. App. 599, 606, 851 A.2d 320, cert. denied, 271 Conn. 909, 859 A.2d 561 (2004); and, in the absence of additional agency direction, sets the standards required for such a petition. See *Cannata* v. *Dept. of Environmental Protection*, supra, 239 Conn. 135–36 (using § 4-176 to evaluate party's correspondence with agency as petition for declaratory ruling); *Liberty Mobile Home Sales, Inc.* v. *Cassidy*, 6 Conn. App. 723, 726–27, 507 A.2d 499 (1986) (same). Thus, in order for the plaintiff's e-mail correspondence with the department to constitute a petition for a declaratory judgment it needed to set forth specific circumstances and seek to have the department apply a regulation, statute or final decision on a matter in its jurisdiction to those specific circumstances.

We cannot conclude that the court was clearly erroneous in determining that the plaintiff's July 28, 2007 e-mail to the department was not a petition for a declaratory ruling. In that e-mail, the plaintiff stated that he was "in the process of researching the laws and regulations that govern the possession of a permit" in the state. Then, through a series of nine questions, the plaintiff asked the department *to identify* and to provide the source of legal authority preventing, in whole or in part, a valid permit holder from carrying a firearm in the state, openly or exposed, and from doing so in a "restaurant" or "an establishment that serves alcoholic beverages . . . ."[10] The plaintiff did not seek to have the department apply or examine a regulation or statute with respect to a specified set of circumstances. Rather, because he was "in the process of researching," he

[10] See footnote 3 of this opinion.

supplied the department with details of general scenarios, such as a permit holder carrying a holstered firearm into a restaurant or an establishment that serves alcoholic beverages, so that the department could then create a list of germane legal authority for him. The plaintiff's e-mail lacks any indication that he sought any form of reasoned *analysis or decision* from the department.[11] See *Cannata* v. *Dept. of Environmental Protection,* supra, 239 Conn. 135.

## II

The plaintiff next claims that the court improperly granted the defendants' motion to dismiss because two exceptions to the doctrine of exhaustion applied in his case. Specifically, the plaintiff argues that he is not required to first petition the department for a declaratory ruling pursuant to § 4-176 because the action for a declaratory judgment he brought in the Superior Court pursuant to General Statutes § 52-29 presents a facial challenge to state statutes that the judicial branch must resolve, and it would be futile to seek a declaratory ruling from the department because the department is biased and lacks the authority to grant the relief he seeks. We are not persuaded.

---

[11] The plaintiff draws our attention to a letter dated June 9, 2009, that the department sent to him in response to six questions, all similar in substance to his original nine questions, that he had e-mailed to them on June 2, 2009. In that letter, the department stated that the newly e-mailed questions appear to "present a request or requests for a declaratory ruling . . . ." The plaintiff argues that the department's alternating interpretation of his similar questions is proof that a person cannot know the form, content and filing procedure required by the department for consideration of a request for a declaratory ruling. We disagree. As discussed above, § 4-176 (a), which grants a party the right to file a petition for a declaratory ruling to an agency, does provide standards with which a party may fashion such a petition. In addition, the department's letter was written by a member of its legal affairs unit and expressly refused to provide answers to his questions because the plaintiff's appeal from the dismissal of his action for declaratory relief in the Superior Court was pending before this court.

## A

The plaintiff contends that he was not required to first exhaust his administrative remedies by petitioning the department for a declaratory ruling because his action for a declaratory judgment in the Superior Court presented a facial challenge to the constitutionality of the "suitability" requirement of § 29-28 (b),[12] incorporated by reference into General Statutes §§ 29-32b and 29-35. He then argues it is the duty of the judiciary to resolve such challenges. Acknowledging that he did not present this claim to the trial court, the plaintiff seeks review of this claim pursuant to the "exceptional circumstances" doctrine of *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973), as refined by *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Specifically, the plaintiff calls our attention to *McDonald* v. *Chicago*, 561 U.S. 742, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010), and argues that review of his claim is warranted under the exceptional circumstances doctrine because "a new constitutional right not readily foreseeable has arisen between the time of trial and appeal." *State* v. *Evans*, supra, 165 Conn. 70; *State* v. *Golding*, supra, 213 Conn. 239 n.8; see *Imperial Casualty & Indemnity Co.* v. *State*, 246 Conn. 313, 321, 714 A.2d 1230 (1998). We are not persuaded.

In *McDonald* v. *Chicago*, supra, 561 U.S. 742, the United States Supreme Court held that a Chicago, and virtually identical Oak Park, municipal ordinance that

---

[12] General Statutes § 29-28 (b) provides in relevant part: "Upon the application of any person having a bona fide residence or place of business within the jurisdiction of any such authority, such chief of police, warden or selectman may issue a temporary state permit to such person to carry a pistol or revolver within the state, provided such authority shall find that such applicant intends to make no use of any pistol or revolver which such applicant may be permitted to carry under such permit other than a lawful use and that *such person is a suitable person to receive such permit. . . .*" (Emphasis added.)

effectively prevented all inhabitants of those municipalities from possessing a firearm in their home was unconstitutional under the second amendment to the constitution of the United States. Id., 742. In so holding, the Supreme Court, for the first time, applied the second amendment, through incorporation into the fourteenth amendment, to the actions of the states. Id., 749–50. The plaintiff asserts that in light of the Supreme Court's holding in *McDonald*, §§ 29-28 (b), 29-32b and 29-35 are unconstitutional on their face because they make a person's second amendment right to keep and to bear arms contingent upon a "suitability" requirement for which there is no statutory definition or guidance.[13]

The plaintiff, however, has failed to advance any legal analysis explaining to this court how *McDonald* confers on him a new constitutional right that renders the statutes he identifies unconstitutional on their face. "[A]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *State* v. *Claudio C.*, 125 Conn. App. 588, 600, 11 A.3d 1086 (2010), cert. denied, 300 Conn. 910, 12 A.3d 1005 (2011). "We do not review constitutional claims that are inadequately briefed." *State* v. *Bryant*, 106 Conn. App. 97, 101 n.4, cert. granted, 287 Conn. 905, 950 A.2d 1282, 940 A.2d 858 (2008); see *Townsend* v. *Hogan*, 115 Conn. App. 671, 673 n.1, 974 A.2d 65 (2009) ("[w]e . . .

---

[13] In a footnote in his appellate brief, the plaintiff also broadly asserts that in light of *McDonald* v. *Chicago*, supra, 561 U.S. 742, it is now unconstitutional for Connecticut to prohibit the open carry of a firearm outside the home by one in possession of a permit. "We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Watkins* v. *Thomas*, 118 Conn. App. 452, 455, 984 A.2d 106 (2009). "Because the law on this issue is unsettled, and the [plaintiff's] claim is inadequately briefed, we decline to review it." *State* v. *Bruno*, 293 Conn. 127, 143 n.13, 975 A.2d 1253 (2009). We, accordingly, do not review this claim.

decline to review any vaguely framed or inadequately briefed constitutional issues"). We conclude that the plaintiff's claim of a new constitutional right is inadequately briefed, and, accordingly, we decline to review the plaintiff's unpreserved claim pursuant to the exceptional circumstances doctrine. See *State* v. *Saunders*, 114 Conn. App. 493. 504 n.11, 969 A.2d 868, cert. denied, 292 Conn. 917, 973 A.2d 1277 (2009).

## B

The plaintiff's final claim is that the court improperly determined that a petition for a declaratory ruling to the department would not be futile or inadequate. Specifically, the plaintiff argues that it would be futile to petition the department for a declaratory ruling because it cannot act in an unbiased manner in interpreting Connecticut's firearm statutes, and, even if it could, the department lacks the authority to provide the relief he seeks. We disagree.

"It is a settled principle of administrative law that, if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter." (Internal quotation marks omitted.) *Pet* v. *Dept. of Health Services*, 207 Conn. 346, 350–51, 542 A.2d 672 (1988). "Notwithstanding the important public policy considerations underlying the exhaustion requirement, [our Supreme Court] has carved out several exceptions from the exhaustion doctrine . . . although only infrequently and only for narrowly defined purposes. . . . Such narrowly defined purposes include when recourse to the . . . remedy would be futile or inadequate." (Citations omitted; internal quotation marks omitted.) *Garcia* v. *Hartford*, 292 Conn. 334, 340, 972 A.2d 706 (2009).

The plaintiff first argues that a petition for a declaratory ruling to the department would be futile because the department is incapable of acting in an unbiased

manner. The plaintiff cites *Wallingford Center Associates* v. *Board of Tax Review*, 68 Conn. App. 803, 809–10, 793 A.2d 260 (2002), and claims that, as in that case, the administrative remedy available to him is futile because the department cannot agree with the plaintiff's interpretation of § 29-35 without " 'backing away' " from the position that it takes on a daily basis in revoking state permits and defending appeals from such revocations before the board. We are not persuaded.

In *Wallingford Center Associates*, the plaintiff appealed from the city tax assessor's valuation of its property to the defendant board of tax review and, when that was unsuccessful, to the Superior Court. *Wallingford Center Associates* v. *Board of Tax Review*, supra, 68 Conn. App. 805. While the appeal to the Superior Court was pending, title to the property changed hands, and the new owner filed a motion to be joined as a party so that it too could challenge the tax assessor's valuation for the years that it was in ownership of the property. Id. The Superior Court denied the motion reasoning that the new owner had failed to first exhaust its administrative remedies by taking its own appeal to the defendant. Id. We concluded that the new owner did not first need to exhaust its administrative remedies by filing its own appeal with the defendant because, at the time, the defendant was engaged in vigorously defending the same valuation, with respect to the very same piece of property, that the new owner sought to challenge. Id., 810. We reasoned that to require the new owner to appeal to the board itself would be futile because the defendant could not have provided the relief the new owner sought without changing a position that it was then vigorously defending at trial. Id.

In *Wallingford Center Associates*, the administrative remedy had been exhausted by the old owner, and the new owner of the property sought to join an action properly before the Superior Court. Moreover, the new owner sought a determination with respect to the same

issue that the defendant had first addressed in the administrative appeal. In the present case, however, the plaintiff seeks to challenge the language of a statute that, according to the trial court, the department has "never officially" addressed, let alone presented a position that it has defended vigorously. The plaintiff, in fact, has alleged that the department considers the statute ambiguous with respect to a permit holder's ability to carry a firearm openly in the state. The administrative remedy has not been exhausted and, unlike in *Wallingford Center Associates*, there is nothing to indicate that requiring the plaintiff to first do so would be mandating an exercise in futility. See *Greenwich* v. *Liquor Control Commission*, 191 Conn. 528, 542, 469 A.2d 382 (1983) ("[a] remedy need not be exhausted if to do so would be a futile gesture" [internal quotation marks omitted]).

We are mindful that, "[i]n light of the policy behind the exhaustion doctrine, these exceptions are narrowly construed. See, e.g., *Simko* v. *Ervin*, 234 Conn. 498, 507, 661 A.2d 1018 (1995) (plaintiffs' mere suspicion of bias on part of defendant, without more, not sufficient to excuse them, on ground of futility, from exhaustion requirement); *O & G Industries Inc.* v. *Planning & Zoning Commission*, 232 Conn. 419, 429, 655 A.2d 1121 (1995) (actual bias, rather than mere potential bias, of administrative body renders resort to administrative remedies futile); *Polymer Resources, Ltd.* v. *Keeney*, [227 Conn. 545, 561, 630 A.2d 1304 (1993)] (mere conclusory assertion that agency will not reconsider decision does not excuse compliance, on basis of futility, with exhaustion requirement); *Housing Authority* v. *Papandrea*, [222 Conn. 414, 430, 610 A.2d 637 (1992)] (fact that commissioner previously indicated how he would decide plaintiff's claim did not excuse compliance, on ground of futility, with exhaustion requirement); *Concerned Citizens of Sterling* v. *Sterling*, [204 Conn. 551,

557–60, 529 A.2d 666 (1987)] (futility is more than mere allegation that administrative agency might not grant relief requested)." *Fish Unlimited* v. *Northeast Utilities Service Co.*, 254 Conn. 1, 13–14, 756 A.2d 262 (2000). We conclude, therefore, that the plaintiff's allegation that the department routinely enforces an adverse interpretation of § 29-35 before the board, if proved, does not render futile the administrative remedy available to him.

The plaintiff next claims that even if he does petition the department for a declaratory ruling, such a petition would be futile because the department lacks the authority to provide the relief he seeks. Specifically, the plaintiff argues that the department's interpretation of § 29-35 is not binding on municipal law enforcement agencies, which also have the authority to arrest individuals for violations of state criminal law. Thus, according to the plaintiff, the administrative remedy provided by the department is futile because it would require additional litigation before he is conclusively informed of his right to carry a firearm openly throughout the state. We disagree.

"A remedy is futile or inadequate if the decision maker is without authority to grant the requested relief." (Internal quotation marks omitted.) *Garcia* v. *Hartford*, supra, 292 Conn. 340. "The law does not require the doing of a useless thing." (Internal quotation marks omitted.) *Labbe* v. *Pension Commission*, 229 Conn. 801, 813, 643 A.2d 1268 (1994). Section 29-28 (b)[14]

---

[14] General Statutes § 29-28 (b) provides in relevant part: "Upon issuance of a temporary state permit to the applicant, the local authority shall forward the original application to the commissioner [of the department]. Not later than sixty days after receiving a temporary state permit, an applicant shall appear at a location designated by the commissioner [of the department] to receive the state permit. Said commissioner [of the department] may then issue, to any holder of any temporary state permit, a state permit to carry a pistol or revolver within the state. . . ."

grants the department the authority to issue permits, and § 29-32 (b) grants it the authority to revoke them "for cause . . . ."[15] As a corollary to this authority, and pursuant to its obligation to issue a declaratory ruling under § 4-176, the department is able and, indeed, even required to interpret § 29-32 (b). See *Connecticut Life & Health Ins. Guaranty Assn.* v. *Jackson*, 173 Conn. 352, 356, 377 A.2d 1099 (1977) ("[A]dministrative agencies must necessarily interpret statutes which are made for their guidance. To rule otherwise would be to ignore the subtle and intricate interaction of law and fact."). Thus, the department's authority to revoke a permit for cause necessarily requires it to determine if our statutes proscribe the open carry of a firearm.

To the extent that the plaintiff seeks an unequivocal declaration that he will not be *arrested* for openly carrying a firearm, it is not the department's lack of authority that keeps the plaintiff from the remedy he seeks; rather, it is a consequence of the question's indefinite parameters. "It is inherent in our judicial system of dispute resolution that the interpretation of statutes, like the development of the common law, grows out of the filtering of a set of facts through the law, as seen by the administrator or judge. The result of this application is a hybrid, composed in part of fact, in part of law, which by its existence contributes to the interpretation of a statute. As is recognized by our policy of declining to give advisory opinions . . . and by our desire that even declaratory rulings be grounded in some real controversy, a statute cannot be read in a vacuum but must be illuminated by the force of concrete, everyday pressures." (Citation omitted.) Id., 356–

---

[15] General Statutes § 29-32 (b) provides in relevant part: "Any state permit or temporary state permit for the carrying of any pistol or revolver may be revoked by the Commissioner of Public Safety *for cause* and shall be revoked by said commissioner upon . . . the occurrence of any event which would have disqualified the holder from being issued the state permit or temporary state permit . . . ." (Emphasis added.)

57. Depending on the specific circumstances, a person who openly carries a pistol conceivably may be subject to arrest for violating several statutes,[16] even if § 29-35 does not prohibit a permit holder from carrying a pistol openly. In sum, if the plaintiff petitions the department for a declaratory ruling by supplying it with specific factual circumstances, the department has the authority to interpret § 29-35 to determine if it allows for the open carry of a firearm under the circumstances provided. If aggrieved, the plaintiff may appeal the department's ruling to the Superior Court. See General Statutes § 4-183. We will not speculate as to the possible consequences of such a ruling on the arrest actions of municipal law enforcement departments who must enforce all of our criminal statutes. "It is not the [plaintiff's] preference for a particular remedy that determines whether the remedy before the agency is adequate . . . and an administrative remedy, in order to be 'adequate,' need not comport with the [plaintiff's] opinion of what a perfect remedy would be." (Citation omitted.) *Connecticut Mobile Home Assn., Inc.* v. *Jensen's, Inc.*, 178 Conn. 586, 590, 424 A.2d 285 (1979). Accordingly, we conclude that a petition to the department for a declaratory ruling would not be futile.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[16] See, e.g., General Statutes §§ 53a-62 (threatening in second degree), 53a-64 (reckless endangerment in second degree), 53a-181 (breach of peace in

second degree), 53a-181a (creating public disturbance) and 53a-182 (disorderly conduct).