13-2369-cv
*Burgess v. Town of Wallingford*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of June, two thousand fourteen.

PRESENT:    BARRINGTON D. PARKER,
            DEBRA ANN LIVINGSTON,
            CHRISTOPHER F. DRONEY,
                        *Circuit Judges*.

_____

RICHARD E. BURGESS,

                        *Plaintiff-Appellant*,

    -v-                                                     No. 13-2369-cv

TOWN OF WALLINGFORD, DOUGLAS L. DORTENZIO, Chief, in his Individual and Official Capacities, ANTHONY MARTINO, Lieutenant, in his Individual and Official Capacities, MICHAEL COLAVOLPE, Sergeant, in his Individual and Official Capacities, GABRIEL GARCIA, Officer, in his Individual Capacity, DEVIN FLOOD, Officer, in his Individual Capacity,

                        *Defendants-Appellees*,

MARK VANAMAN,

                        *Defendant*.[*]

_____

_____

[*] The Clerk of the Court is directed to amend the caption as set forth above.

1

RACHEL M. BAIRD, Rachel M. Baird & Associate, Torrington, CT, *for Plaintiff-Appellant*.

THOMAS R. GERARDE (Kristan M. Maccini, *on the brief*), Howd & Ludorf, LLC, Hartford, CT, *for Defendants-Appellees*.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Richard E. Burgess appeals from a judgment of the United States District Court for the District of Connecticut (Melançon, *J.*), entered May 15, 2013. The district court granted summary judgment in favor of all of the defendants named in Burgess's complaint. Burgess's suit brought claims against the Town of Wallingford and police officers Douglas L. Dortenzio, Anthony Martino, Michael Colavolpe, Gabriel Garcia, and Devin Flood (collectively, the "Defendants-Appellants") under 42 U.S.C. § 1983, alleging violations of his constitutional rights stemming from Burgess's arrest on charges of disorderly conduct.[1] We assume the parties' familiarity with the underlying facts and the procedural history of the case.

I.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). This standard is "forgiving and protects all but the plainly

---

[1] Burgess's complaint also contained a malicious prosecution claim against Mark Vanaman, a private individual. The district court, acting *sua sponte* but after requesting a response from Burgess, granted summary judgment in Vanaman's favor on that claim. Burgess has not appealed this portion of the judgment, and accordingly we do not address this claim. We also do not address Burgess's First Amendment claim or his claim against the Town of Wallingford for failure properly to train its police officers, as Burgess has chosen not to pursue those claims on appeal.

incompetent or those who knowingly violate the law." *Amore v. Novarro*, 624 F.3d 522, 530 (2d Cir. 2010) (internal quotation marks omitted). "A police officer who has an objectively reasonable belief that his actions are lawful is entitled to qualified immunity." *Okin v. Village of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 433 (2d Cir. 2009); *see also Saucier v. Katz*, 533 U.S. 194, 202 (2001) (stating that qualified immunity attaches unless "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted"), *overruled in part on other grounds by Pearson*, 555 U.S. 223 (2009). A police officer is also entitled to qualified immunity if "officers of reasonable competence could disagree on the legality of the action at issue in its particular factual context." *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007) (internal quotation marks omitted).

The qualified immunity analysis has two portions. First, we inquire whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." *Saucier*, 533 U.S. at 201. The second question is whether the right was "clearly established," which must be determined "in light of the specific context of the case, not as a broad general proposition."[2] *Id.* In the course of this inquiry, "[o]nly Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004).

## II.

The first issue Burgess raises on appeal concerns his claim that his arrest on charges of disorderly conduct violated his right to bear arms under the Second Amendment. We need not reach

---

[2] Although the Supreme Court formerly required lower courts to examine these questions in order, the Court has since ruled that the sequence is no longer mandatory. *See Pearson*, 555 U.S. at 236.

the merits of this question, however, because even if a right of Burgess's was violated, it was not clearly established.

In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment conferred an individual right to keep and bear arms for self-defense sufficient to invalidate a law that prohibited keeping firearms in one's home. 554 U.S. 570, 628-30 (2008). But as the Court also said, the right protected by the Second Amendment "is not unlimited." *Id.* at 626. Even at present, we are unsure of the scope of that right. *See Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 89 (2d Cir. 2012) ("[W]e do not know . . . the scope of [the Second Amendment] right beyond the home and the standards for determining when and how the right can be regulated by a government. This vast '*terra incognita*' has troubled courts since *Heller* was decided."), *cert. denied sub nom. Kachalsky v. Cacace*, 133 S. Ct. 1806 (2013). Thus, the protection that Burgess claims he deserves under the Second Amendment – the right to carry a firearm openly outside the home – is not clearly established law. *See Saucier*, 533 U.S. at 201. And as of Burgess's arrest on May 16, 2010, this right was even less concrete, as the Supreme Court had not yet held that the Second Amendment right in *Heller* applies to state governments; it did so shortly thereafter in *McDonald v. City of Chicago*, 561 U.S. 742 (June 28, 2010). Given this legal ambiguity, Defendants-Appellants were entitled to qualified immunity, and the district court correctly granted summary judgment in their favor on Burgess's Second Amendment claim.

### III.

Burgess also brought a claim in the district court for false arrest and unreasonable seizure of a handgun. He contends that at the time of his arrest, Connecticut law clearly entitled him to carry his firearm openly, and that the defendant officers' decision to stop him and subsequently

4

arrest him on charges of disorderly conduct was unreasonable in the circumstances of this case. We disagree.

Connecticut statutory law governing the possession of handguns does not expressly prohibit or endorse the open carry of properly licensed firearms, and Burgess has not cited any legal decision clearly establishing that Connecticut handgun permit-holders can openly carry their weapons. Moreover, Connecticut courts have confirmed that carrying a permitted firearm openly can lead to arrest when circumstances warrant. *See Peruta v. Comm'r of Pub. Safety*, 20 A.3d 691, 702 & n.16 (Conn. App. Ct. 2011) (stating that "[d]epending on the specific circumstances, a person who openly carries a pistol conceivably may be subject to arrest for violating several statutes," including the disorderly conduct statute, even if the statute governing handgun licenses may "not prohibit a permit holder from carrying a pistol openly" (footnote omitted)).

In this case, Burgess was arrested outside Yale Billiards, a pool hall that serves liquor, when the defendant police officers responded to the establishment after a verbal altercation between Burgess and Mark Vanaman, another patron, that arose as a result of Burgess's open carry of his firearm and refusal to conceal it upon request. Vanaman called 911 and reported that Burgess was then outside the establishment with a handgun and two magazines of ammunition. Robert Hilton, the owner of Yale Billiards, also called 911 and stated that he had asked Burgess to leave because "he made some customers uncomfortable." The dispatcher told responding officers that Burgess had an exposed firearm and was pacing back and forth in front of the billiards hall. Officer Devin Flood stated in a subsequent memorandum that he "believed . . . based upon the initial dispatch [that] there was a possibility that patrons at Yale Billiards were in danger of serious physical injury from a suspect pacing back and forth with an exposed firearm," and once he reached the scene, he

5

understood based on his on-scene investigation that Burgess "carried his unconcealed weapon into a pool hall crowded with patrons with the intention of causing a disturbance." Sergeant Michael Colavolpe said that he saw the firearm on Burgess's person upon approaching him, as well as the two magazines on his waist. In a radio transmission during police response to the scene, Sergeant Colavolpe reported to another officer that Burgess had "caused a disturbance" at the pool hall and that people were "freaking out" after the incident.

As in *Goldberg v. Town of Glastonbury*, 453 F. App'x 40 (2d Cir. 2011) (summary order), a prior nonprecedential order in which we concluded that a claim similar to Burgess's was barred by qualified immunity, we cannot conclude that the defendant officers acted unreasonably in believing that they could stop and arrest Burgess. Burgess, like the plaintiff in *Goldberg*, was wearing an exposed firearm in an establishment open to the public. He engaged in a verbal altercation with a customer inside, which resulted in two separate 911 calls reporting a disturbance. As in *Goldberg*, "we conclude that reasonable officers could, at minimum, disagree on whether there was probable cause to arrest plaintiff . . . , and accordingly the district court's qualified immunity determination ought to be affirmed." *Id.* at 42.

Moreover, because we conclude that "officers of reasonable competence could disagree on the legality" of the police conduct here, *Walczyk*, 496 F.3d at 154 (internal quotation marks omitted), we decline to address the merits of Burgess's Fourth Amendment claim. In sum, the district court properly granted summary judgment to Defendants-Appellants on the claim of false arrest and unlawful seizure because the officers are entitled to qualified immunity.[3]

---

[3] Burgess's complaint also claimed a violation of the right to bear arms under the Connecticut Constitution. The district court declined to exercise supplemental jurisdiction on this claim after dismissing his causes of action brought under federal law. *See* 28 U.S.C. § 1367(c). We detect no abuse of discretion in the district court's dismissal of these claims without prejudice. *See Oneida Indian Nation of N.Y. v. Madison Cnty.*, 665 F.3d 408, 437 (2d Cir. 2011).

We have considered all of Burgess's remaining arguments and find them to be without merit.

For the foregoing reasons, the judgment of the district court is hereby **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk